**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SERGIO PULIDO-VASQUEZ,
also known as Obdulio
Rodriguez-Mendieta,

Defendant-Appellant.

No. 07-3105
(D.C. No. 05-CR-40154-JAR)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **BALDOCK**, **BRORBY**, and **EBEL**, Circuit Judges.


Defendant Sergio Pulido-Vasquez conditionally pleaded guilty to

possession of methamphetamine with the intent to distribute, in violation of

21 U.S.C. § 841(a)(1).  He reserved the right to appeal the district court's denial

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of his motion to suppress evidence found in a search of the vehicle in which he was a passenger.  Mr. Pulido-Vasquez now appeals that denial.  We affirm.

## I.  BACKGROUND

At about 11 p.m. on November 20, 2005, Kansas Highway Patrol Trooper Clint Epperly, a drug-interdiction trooper, noticed a Ford Explorer with Minnesota license plates traveling northbound on I-35.  Following the vehicle, Trooper Epperly drove in the left lane while the vehicle was in the right lane, then pulled into the right lane directly behind it.  Trooper Epperly saw the Explorer abruptly swerve across the fog line and drive about two seconds on the shoulder of the road, for no apparent weather-, road-, or traffic-related reason.  Trooper Epperly stopped the vehicle.

As he approached the Explorer, Trooper Epperly noted there was only one key on the key ring and no luggage in the vehicle.  He requested and received identification from the driver, Jonathan Medina (who produced a California driver's license), and the passenger, Defendant Pulido-Vasquez (who produced a Mexican identification card).  Speaking a combination of English and Spanish, Trooper Epperly questioned defendants about their travel plans.  They told him that they were returning to Minnesota after taking Mr. Pulido-Vasquez's mother to visit his sister.  Trooper Epperly also learned that the Explorer was owned by a third man, who lived in Minnesota.

Trooper Epperly asked Mr. Medina to accompany him to his cruiser so that he could issue him a warning. While Mr. Pulido-Vasquez remained in the Explorer, Trooper Epperly asked Mr. Medina additional questions. Mr. Medina's answers indicated that he had not known Mr. Pulido-Vasquez for a long time and knew only his nickname, not his given name or surname. Mr. Medina said that they had dropped Mr. Pulido-Vasquez's mother off at the home of Mr. Pulido-Vasquez's uncle in Wichita, Kansas.

Leaving Mr. Medina in the cruiser, Trooper Epperly then returned to the Explorer to speak to Mr. Pulido-Vasquez. Mr. Pulido-Vasquez repeated that they had just dropped his mother off in Wichita, but he related that he did not have an uncle in Wichita. His only relatives there were his sister and brother-in-law.

After speaking to Mr. Pulido-Vasquez, Trooper Epperly returned to his cruiser, gave back Mr. Medina's documentation, explained that he was giving Mr. Medina a warning, and told Mr. Medina he was free to go. He then asked Mr. Medina and Mr. Pulido-Vasquez for permission to search the vehicle for drugs. Both men consented.

On Trooper Epperly's instructions, both men stood in front of the Explorer while he searched it. In the floor of the rear cargo area, Trooper Epperly discovered a concealed compartment that he recognized as an after-market feature that is frequently used to transport drugs. At this point, Trooper Epperly placed both Mr. Medina and Mr. Pulido-Vasquez under arrest. When he brought his

drug-sniffing dog to the Explorer, the dog alerted and indicated to the rear floor of the vehicle. The hidden compartment contained approximately five kilograms of methamphetamine (along with food items, such as garlic salt and cloves, which can be used to mask the odor of illegal substances).

Both men were charged with possession with intent to distribute the methamphetamine that was located in the compartment. Mr. Pulido-Vasquez filed a motion to suppress evidence of the drugs. After an evidentiary hearing, the district court denied the motion. Mr. Pulido-Vasquez then entered a conditional plea of guilty, reserving his right to appeal matters relating to the denial of the suppression motion.

## II. DISCUSSION

When reviewing a denial of a motion to suppress, "we review the court's factual findings for clear error and view the evidence in the light most favorable to the government." *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir.), *cert. denied*, 129 S. Ct. 332 (2008). Clear error exists where "a finding [is] more than possibly or even probably wrong; the error must be pellucid to any objective observer." *United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1119 (10th Cir.), *cert. denied*, 128 S. Ct. 417 (2007) (quoting *Watson v. United States*, 485 F.3d 1100, 1108 (10th Cir. 2007)). The ultimate question of the reasonableness of a search or seizure under the Fourth Amendment is reviewed de novo. *Worthon*,

520 F.3d at 1178. Any credibility determinations are within the province of the district court. *Id.*

When we review the constitutionality of a traffic stop under the Fourth Amendment, we engage in a two-step inquiry. *United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir. 2003). First, we determine if the stop of the vehicle was justified at its inception. *Id.* Second, we consider whether the officer's actions were "reasonably related in scope to the circumstances that first justified the interference." *Id.* (quotation marks and citation omitted).

*1. The Initial Stop of the Vehicle*

"When evaluating the reasonableness of the initial stop, '[o]ur sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *Id.* (quoting *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)) (alteration in original; internal quotation marks omitted).

Mr. Pulido-Vasquez challenges the initial stop in two respects. He raises (1) a legal claim that briefly going over the fog line is not a violation of Kan. Stat. Ann. § 8-1522(a), which states that on any road with two or more lanes of traffic, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first

ascertained that such movement can be made with safety," and (2) a factual claim that Trooper Epperly caused the vehicle to go over the fog line.

With regard to the first claim, we have previously rejected the argument that a single instance of going over the fog line cannot be a violation of the Kansas statute. *E.g.*, *United States v. Cline*, 349 F.3d 1276, 1287 (10th Cir. 2003). "Rather, the particular facts and circumstances of each case determine the result." *Id.* Here, the district court credited Trooper Epperly's testimony that there were no external factors to account for the Explorer's sudden swerve over the fog line.

The factual situation of the initial stop resembles instances in which we have found a violation of the Kansas statute or similar laws of other states. In *Cline*, we determined that a one-time swerve onto the shoulder of the road could give rise to an articulable suspicion of a section 8-1522(a) violation. *Id.* *See also United States v. Alvarado*, 430 F.3d 1305, 1309 (10th Cir. 2005) ("Under the particular facts and circumstances of this case, where there is an utter absence of any weather conditions, road features, or other circumstances that could have interfered with [the driver's] ability to keep his vehicle in a single lane," the trooper "had a reasonable articulable suspicion that [the driver], by crossing one foot over the fog line, had violated [a Utah statute similar to Kan. Stat. Ann. § 8-1522]."); *Zabalza*, 346 F.3d at 1258 (finding a stop reasonable after a vehicle crossed the center line twice); *United States v. Ozbirn*, 189 F.3d 1194, 1198-99

(10th Cir. 1999) (finding probable cause to stop a vehicle for crossing the fog line twice where weather, road conditions, and officer conduct would not have contributed to such an action). The district court did not err in determining that Trooper Epperly had a reasonable suspicion that the driver of the vehicle had violated Kansas law.

Furthermore, we find no clear error in the district court's determination that there was "not [] convincing evidence that Trooper Epperly caused the traffic infraction." R., Vol. I, Doc. 31, at 7 (Mem. & Order Denying Def's Mot. to Suppress, dated June 26, 2006). In the district court's analysis, there was no evidence, aside from Mr. Pulido-Vasquez's "conclusory assertion" at the evidentiary hearing, that Trooper Epperly was following the vehicle closely. *Id.* at 7-8. We will not disturb this factual determination. Accordingly, we conclude that the initial stop of the vehicle was justified at its inception.

*2. The Search of the Vehicle*

Once an officer has completed a traffic stop, he must allow the driver to continue on his way without further questioning so long as the driver has provided a valid license and proof of his right to operate the vehicle. *Zabalza*, 346 F.3d at 1259. "However, this general rule is subject to a significant exception permitting an officer to engage in further questioning unrelated to the initial stop if he has probable cause, the consent of the suspect, or, at a minimum, a reasonable suspicion of criminal activity." *Ozbirn*, 189 F.3d at 1199.

The issue of voluntary consent at the conclusion of a traffic stop requires a "fact-laden inquiry depending heavily on the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." *Cardenas-Alatorre*, 485 F.3d at 1118 (quotation marks omitted). Here, Mr. Pulido-Vasquez and Mr. Medina both expressed consent for Trooper Epperly to search the vehicle.

Mr. Pulido-Vasquez, however, asserts that a language barrier nullifies any consent given to search the vehicle. A "working knowledge" of the English language is all that is required for an encounter to be consensual. *United States v. Zubia-Melendez*, 263 F.3d 1155, 1163 (10th Cir. 2001). The requisite "working knowledge" exists if the individual has "sufficient familiarity with the English language to understand and respond" to the officer's questions. *Id*.

At the suppression hearing, Trooper Epperly testified that, based on his experience, he believed that neither man was having fundamental difficulties comprehending him because they made appropriate responses to his questions and did not say they didn't understand. The district court found this testimony credible. After our review of the record, including the videotape of the stop of the vehicle, we find no clear error in the district court's factual determination that Mr. Pulido-Vasquez had sufficient familiarity with the English language to consent to the search.

Likewise, we see no merit to the argument that Mr. Pulido-Vasquez's consent was coerced. Nothing in the record demonstrates that Mr. Pulido-Vasquez had an objectively reasonable belief that he was not free to leave or disregard Trooper Epperly's search request. Among other indicia of voluntary consent, Mr. Pulido-Vasquez confidently responded, "No problem" when Trooper Epperly asked him for permission to search the vehicle. R., Vol. II, at 24. *See, e.g.*, *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986) (finding voluntary consent where vehicle occupant said "No problem" to the request to search and watched the search without objection). We see no reason to overturn the district court's conclusion that the "subsequent search of the car [was] part and parcel of a consensual encounter." *Cardenas-Alatorre*, 485 F.3d at 1120.

Standing alone, Mr. Pulido-Vasquez's consent is sufficient for us to determine that the search was legal. *See id.* at 1118 ("If, at the conclusion of a traffic stop a driver voluntarily consents to further questioning, no seizure takes place and 'the Fourth Amendment's strictures are not implicated.'"). There is, however, an alternative basis for that conclusion—a reasonable suspicion of unlawful activity. "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity. Among those factors . . . are having no proof of ownership of the vehicle, having no proof of authority to

operate the vehicle, and inconsistent statements about destination." *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

Notwithstanding any misunderstanding and ambiguity attributable to language difficulties, Trooper Epperly was presented with two individuals with different stories—one claiming that he dropped off Mr. Pulido-Vasquez's mother with his sister at her apartment and the other claiming that Mr. Pulido-Vasquez's mother was left with his uncle at his house. Other circumstances apparent to Trooper Epperly included the lack of luggage (even though the men claimed to be taking an overnight trip), the absence of information on permission to drive the Explorer, Mr. Medina's failure to state Mr. Pulido-Vasquez's full name, and a key ring with only one key on it (which the officer believed could be indicative of a vehicle used to transport drugs). Taken together, these factors could raise an experienced officer's reasonable suspicion that the men were involved in criminal activity.

### III. CONCLUSION

Under our precedents, Trooper Epperly's initial stop of the Explorer for violation of Kan. Stat. Ann. § 8-1522(a) was lawful, as was the subsequent search of the vehicle. The district court correctly denied Mr. Pulido-Vasquez's motion to suppress. AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge