2009 WY 35

**Daniel Robert LATTA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0065.**

Supreme Court of Wyoming.

March 10, 2009.

Representing Appellant: Dion J. Custis of Dion J. Custis, P.C., Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Jeremy C. Schwendiman, Student Intern. Argument by Mr. Schwendiman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Before he pled guilty to felony possession of marijuana with intent to deliver, Daniel R. Latta filed a motion to suppress evidence seized from his vehicle after a traffic stop. The district court denied his motion, and Latta now claims on appeal that the district court erred in denying the motion because, although he conceded that the initial stop was legal, he did not voluntarily consent to the trooper's second round of questions and the trooper did not have a reasonable suspicion of criminal activity justifying Latta's detention until a drug dog arrived. We affirm.

## ISSUE

[¶ 2] Latta presents just one issue for our consideration:

I. Did the trial court abuse its discretion and commit reversible error when it denied [Latta's] Motion to Suppress?

The State rephrases the issue this way:

1. The trial court did not err when it denied [Latta's] Motion to Suppress Evidence.

## FACTS

[¶ 3] While patrolling a section of I-80 on April 26, 2007, Wyoming Highway Patrol Trooper Jason Green, accompanied by Trooper Mike Felicetti, noticed a gray car which appeared to be speeding. According to Trooper Green's radar, the gray car, driven by Daniel R. Latta, was traveling 79 miles per hour in a 75 mile per hour zone. Upon spotting the trooper, Latta immediately slowed to 65 miles per hour, and as the two vehicles passed one another, Latta shielded his face with his arm and hand.

[¶ 4] Trooper Green initiated a stop of Latta, and both troopers approached the vehicle and informed Latta that he had been stopped for speeding. Latta was visibly shaking, and began stuttering, agreeing that he had been speeding because he was on his way home. Trooper Green noticed that Latta's face was flushed and his hands were trembling. The trooper told Latta that he would give him a warning, asked him to calm down, and requested his driver's license and proof of insurance.

[¶ 5] Latta informed the trooper that the vehicle was not his, but a rental, whereupon the trooper asked for the rental agreement. Latta gave his license, but no rental agreement—instead, he gave the trooper a card listing the vehicle's VIN and a reference number for law enforcement to call to verify that Latta was authorized to drive the car.

[¶ 6] The trooper then asked Latta about his travel plans, and Latta, still stuttering, said that he had been in Salt Lake for "pleasure," not business. Latta said he had been traveling for four days. While talking to Latta, Trooper Green noticed shirts hanging on the backseat, a cooler, several overnight bags, and two pillows. After this initial encounter, which lasted "[a] minute to two, maybe ...," Trooper Green returned to his patrol car.

[¶ 7] While in his patrol car, Trooper Green called the number on the back of the card Latta gave him, and discovered Latta had in fact rented the vehicle a week before. The card was apparently given to Latta as a frequent renter in lieu of a rental agreement. Trooper Green filled out a warning ticket for speeding and returned to Latta's vehicle, where he then noticed the smell of marijuana. He explained the warning and then asked Latta if he rented cars often, to which Latta responded in the affirmative. The trooper asked Latta again from where he was coming, but instead of Salt Lake, Latta responded that he was coming from a friend's house in Reno. Trooper Green then

ended the conversation and told Latta he was free to leave, and began to walk away.

[¶ 8] After walking back to his vehicle, the trooper returned and asked Latta if he could ask him a few more questions. Latta agreed, and the trooper told him he was under no obligation to answer any questions if he did not want to—yet Latta again agreed to answer the trooper's questions. Trooper Green then asked him if anyone had given him anything to take back from his trip, to which he answered no while swallowing hard twice. Throughout the interaction, the trooper asked Latta if there was any marijuana in the car. Latta turned from the trooper, and said no. Then, Trooper Green asked if he could search, and Latta responded that he did not understand. Trooper Green clarified his request to search, and explained to Latta that he was suspicious and wanted permission to search the car for illegal substances by letting his dog sniff the vehicle. Latta responded, "Just search or do whatever you need to do."

[¶ 9] Trooper Green's dog alerted immediately, and after removing Latta from his vehicle, Trooper Green found marijuana in Latta's trunk. Latta was arrested, and during transport, Latta expressed that there was nothing illegal in the car "except what was in the trunk." Trooper Green immediately read Latta his Miranda rights. Latta's trunk contained approximately thirty pounds of marijuana. On April 27, 2007, Latta was charged by felony information with possession of a controlled substance, marijuana, with the intent to deliver, in violation of Wyo. Stat. Ann. 35-7-1031(a)(ii), and possession of a felony amount of a controlled substance, marijuana, in violation of Wyo. Stat. Ann. 35-7-1031(c)(iii). On May 21, 2007, Latta pled not guilty to both charges. On July 19, 2007, Latta filed a Motion to Suppress, and a hearing was held the following month. During the hearing, Latta conceded that the initial stop was valid, but argued the reasonableness of his further detention that led to the discovery of the marijuana. The district court denied Latta's motion. On October 22, 2007, Latta changed his plea to guilty and was sentenced on January 11, 2008. This appeal followed.

## STANDARD OF REVIEW

[¶ 10] In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*. *Shaw v. State*, 2009 WY 18, ¶ 19, 201 P.3d 1108 (Wyo.2009).

## DISCUSSION

[¶ 11] Latta claims that the State obtained the thirty pounds of marijuana pursuant to an illegal search in violation of both the state and federal constitutions because his consent to answer Trooper Green's second set of questions was not voluntary and that, because the trooper had not gained the information necessary to form a reasonably articulable suspicion that a crime was being committed, he illegally detained Latta while the search of the car was being conducted. Because Latta does not claim that the traffic stop was unjustified, or that the initial detention exceeded the scope of the stop, we begin our discussion with consideration of whether or not Latta's consent to further questioning was voluntary.

[¶ 12] The right of citizens to be free from unreasonable searches and seizures is guaranteed by article 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution. In *O'Boyle v. State*, 2005 WY 83, ¶ 38, 117 P.3d 401, 412 (Wyo.2005) this Court recognized that:

[A] waiver of constitutional rights under our constitution must appear by clear and positive testimony, and, if a search or seizure is based upon the proposition that consent was given, there should be no question from the evidence that consent was "really voluntary and with a desire to invite search ... [or further questioning], and not done merely to avoid resis-

tance.". . . Acquiescence and nonresistance have not been deemed sufficient under Wyoming law to establish consent. Under both constitutions, we examine the totality of the circumstances to determine if consent was voluntary. Among the factors we consider are: the demeanor of the law enforcement officer, whether the individual was told he could refuse the request, the presence of other law enforcement officers, the length of the detention and nature of the questioning before consent was given, and other coercive factors. *Id.* ¶¶ 40–42, 61, 117 P.3d at 413, 418.

[¶ 13] In light of the totality of the factual circumstances present in this case, we are confident that Latta's consent was voluntary. We conclude that the initial traffic stop was brief, the trooper's conduct was professional, courteous, and non-coercive throughout the length of the entire encounter, and that the consents given by Latta were unhesitant and immediate. The record clearly shows that the initial contact between Latta and law enforcement, during which Trooper Green issued a warning ticket, lasted approximately six minutes. At all times, Trooper Green remained professional, courteous, and non-coercive. He allowed Latta to remain in his own vehicle during the entire conversation, and even asked Latta if he would mind if he spoke with him a bit longer, told him he did not have to agree, and asked him if he was okay with answering more questions, and Latta agreed.

[¶ 14] Even when considering the fact that the patrol car's lights remained flashing and that there were two uniformed officers present, under the totality of the circumstances we can conclude that Latta's consent to a second round of questions was voluntary—"neither [of] these factors, alone [can] be seen as proving that the person stopped did not feel that he was free to go . . . A reasonable person in the appellant's position at the time would have felt that he could have said 'no' and proceeded on his way." *Marinaro v. State,* 2007 WY 123, ¶ 11, 163 P.3d 833, 836 (Wyo.2007).

[¶ 15] Having concluded that Latta's consent was voluntary, we need not consider whether Trooper Green had reasonable sus-

picion of illegal activity to warrant further questioning. Voluntary consent obviates the necessity of determining whether the trooper had sufficient reasonable suspicion of criminal activity to pursue further questioning. *Marinaro,* ¶ 12, 163 P.3d 836.

## CONCLUSION

[¶ 16] The district court did not abuse its discretion or otherwise err as a matter of law in denying Latta's Motion to Suppress. The Judgment and Sentence of the district court is affirmed.