**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PHU SAY TANG,

      Defendant-Appellant.

No. 08-4179

(D.C. No. 2:07-CR-161-TS-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, MURPHY,** and **HARTZ**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant Phu Say Tang ("Tang") was indicted on one count of knowingly possessing 100 or more plants of marijuana with the intent to distribute and manufacture

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

marijuana, in violation of 21 U.S.C. § 841(a)(1). This charge arose as a result of a traffic stop of Tang's vehicle. Tang filed a motion to suppress the evidence found in his vehicle, and alleged that law enforcement officers lacked reasonable suspicion to stop or detain him for a traffic violation. At the conclusion of an evidentiary hearing, the district court denied Tang's motion to suppress.

Tang entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. Tang was then sentenced to 18 months' imprisonment and 48 months of supervised release. We have jurisdiction over Tang's timely appeal pursuant to 28 U.S.C. § 1291, and affirm.

I

At approximately 10:00 p.m., on February 2, 2007, Trooper Lance Christensen of the Utah Highway Patrol was on duty near Wanship, Utah, on Interstate 80. Wanship is located near Silver Creek Canyon, an area with curvy, narrow roads. Christensen testified that numerous accidents involving impaired, speeding, or drowsy drivers have occurred in the area. Once in Wanship, however, where the traffic stop occurred, the highway widens and is relatively flat.

Christensen was parked in the median of the interstate, observing eastbound traffic. Because it was 10:00 p.m. and there are no street lights on this particular stretch of highway, and there was no moonlight in the area, it was dark. There was little traffic. Christensen testified that there was a mild to moderate wind, and that if a driver changed directions, the driver could encounter a cross-wind. Christensen saw a U-Haul truck, later

2

determined to be driven by Tang, traveling eastbound in the right lane of the two lanes of eastbound travel on I-80. In that area, the highway makes a gradual left turn. Tang's vehicle was a fairly large U-Haul truck with a rectangular storage area overhanging the front, which Christensen agreed could act almost like a sail on a windy night.

Christensen pulled out and began traveling eastbound in the left lane. Christensen then saw Tang's vehicle cross over the right side fog line. There were dual tires on the back of Tang's vehicle and Christensen saw both back right tires cross approximately two-and-a-half feet over the right side fog line, and remain over the line for 200 to 300 yards. According to Christensen, the two tires were approximately two-and-a-half feet wide[1] and both wheels were across the white fog line for the entire 200 to 300 yards.

Christensen was several car lengths behind Tang's vehicle when he noticed the lane violation, although he was traveling faster than Tang's vehicle and was catching up to the vehicle. Christensen did not drive alongside Tang's vehicle and he never overtook the vehicle. Christensen followed the vehicle for approximately one mile after the lane violation, and did not see any additional violations. Christensen then stopped Tang's vehicle.

Christensen testified that it is common for people to drive over the line on the freeway, but that Tang's behavior was distinct because of the time of night and the length

---

[1] There was conflicting testimony about the width of the dual tires. A defense investigator estimated their width to be eighteen inches and a highway patrol trooper who assisted in the search of Tang's vehicle estimated their width to be about thirty inches. The district court found that the tires were "at least two feet wide." Aplt. App. at 64.

3

of time Tang's vehicle was over the fog line. Christensen testified that usually when a driver crosses the line or touches it, the driver comes right back into the lane of travel. Christensen testified: "A distance that far [200-300 yards] I don't know if the driver's dozing off or what, if they're just not paying attention, but that's quite a distance." Aplt. App. at 20. Tang's vehicle was also farther over the fog line than is typical. Moreover, on this portion of the interstate, Christensen had investigated approximately one hundred cases where drivers had fallen asleep and crashed, and Christensen had pulled over hundreds of drivers and found them to be sleepy. Christensen also stated:

> It's been my experience that often times people who are driving a U-Haul are moving, could be moving a great distance, so whether or not they are tired or drowsy because they have been driving all day or they loaded all their stuff up and have been driving a great length of time, that was my concern, possibly they are tired and that's the reason for the violation.

Id. at 13. Christensen also stated that the basis for his stop was the portion of the Utah statute requiring drivers on divided highways to keep their vehicle as nearly as practical within a single lane.

At the time of the hearing on Tang's motion to suppress, Christensen had been employed by the Utah Highway Patrol for approximately four years. Prior to his employment with the Utah Highway Patrol, Christensen was employed for four years with the Wasatch County, Utah, Sheriff's Office. As a result of his employment experiences, Christensen has conducted thousands of traffic stops. At the time of the traffic stop, Christensen had received training at the Utah POST Police Academy, and had

4

attended a Desert Snow training course, a basic drug recognition course, and the Highway Patrol interdiction course (for which Christensen was also an instructor).

Tang was ultimately indicted on one count of knowingly possessing 100 or more plants of marijuana with the intent to distribute and manufacture marijuana, in violation of 21 U.S.C. § 841(a)(1), stemming from the traffic stop of his vehicle.[2] Tang appeals from the denial of his motion to suppress the evidence that was discovered from the traffic stop of his vehicle.

II

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004). Tang's sole argument on appeal relates to the reasonableness of Christensen's initial stop of his vehicle.

We have held that, in order to satisfy the Fourth Amendment's reasonableness requirement, a law enforcement officer "'must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile.'" United States v. Cervine, 347 F.3d 865, 869 (10th Cir. 2003) (quoting

_____

[2] Upon approach of Tang's vehicle, Christensen detected the odor of marijuana. Tang consented to a search of his vehicle, and "[n]umerous marijuana seedlings and equipment used to cultivate marijuana were located in the truck." Aplt. Br. at 6.

5

United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993)).  Thus, "[w]hen evaluating

the reasonableness of the initial stop [of a vehicle], '[o]ur sole inquiry is whether this

particular officer had reasonable suspicion that this particular motorist violated any one of

the multitude of applicable traffic and equipment regulations of the jurisdiction.'"  United

States v. Zabalza, 346 F.3d 1255, 1258 (10th Cir. 2003) (quoting United States v.

Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)) (further internal quotations

omitted).

The district court found that there were two valid bases for pulling over Tang's

vehicle: (1) a violation of the relevant Utah lane statute;[3] and (2) to investigate an

impaired or drowsy driver.  The district court stated:

> I'm also going to find all the witnesses who have testified today
> have testified credibly and truthfully.  I am going to deny the
> defense motion for suppression of evidence finding that there
> were reasonable grounds for the stop.  First under Utah Code
> Annotated 41-6-61, drivers are required to keep a vehicle as
> nearly as practical within a single lane.  Here the evidence was
> that it was a long period of time, seven plus seconds, a long
> distance, 200 to 300 yards, and a substantial amount over the
> line.  There's been a lot of different evidence about how wide
> the tires are, but I've had a chance to look at a video of the
> dualies in the back, and it seems to me that Officer Jeffery's
> estimate of about two feet seems right, although defense puts it
> about 18 inches, and the other officer puts it at about two-and-a-
> half feet, but approximately two feet.  Going over at least two
> feet is a substantial amount that the experienced officer viewed
> it as a, quote, "unsafe maneuver," close quote.  I've observed a

---

[3]  Utah Code Annotated § 41-6-61, cited by the district court, was renumbered as Utah Code Annotated § 41-6a-710 as of February 2005.  The language of the statute was unchanged.

6

video of the area, and I'm going to make a factual finding that it was practical in light of all the circumstances here to keep the vehicle much closer to its assigned lane than it was, and there was certainly reasonable suspicion for a stop on that basis.

As a separate and second and independent reason for validating the stop here, I find that the officer had reasonable suspicion to investigate impaired or drowsy driving. The car straddled the line for about 600 to 900 feet, or seven seconds. In United States v. Lee, 73 F.3d 1034, a Tenth Circuit case from 1996, the officer was concerned about a driving pattern that lasted a hundred feet, 100 to 150 feet for one second. Here we have far more than that, and so it seems to me there was reasonable suspicion for a stop on that basis alone.

There's been some suggestion there were other things going on there. This was a marked vehicle, so maybe the driver when the driver saw the marked vehicle took excessive—or took precautions to make sure there weren't any other things in the driving pattern, but the officer had that substantial maneuver over, and that would give reasonable suspicion to see whether someone was drunk or falling asleep. I think members of the motoring public expect the highway patrol officers to step in to make sure that things are all right. . . . [T]he officer was worried about this unsafe maneuver and reasonably investigated it. . . .

Aplt. App. at 63-65.

The relevant Utah statute in effect at the time of the stop provided that "On a roadway divided into two or more clearly marked lanes for traffic . . . (1) A person operating a vehicle: (a) shall keep the vehicle as nearly as practical entirely within a single lane." Utah Code Ann. § 41-6a-710(1)(a). We have addressed the validity of traffic stops in relation to this and similar statutes multiple times.

In United States v. Gregory, 79 F.3d 973 (10th Cir. 1996), an officer stopped a truck after it "briefly crossed into the right shoulder emergency lane" where "[t]he road

7

was winding, the terrain mountainous and the weather condition was windy." 79 F.3d at 978. We held that the stop was unreasonable in light of the Utah statute's qualification that vehicles remain in a single lane only "as nearly as practical," reasoning that under the particular weather and road conditions present on that occasion, "any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity." Id.

Subsequent to our decision in Gregory, we have emphasized that the case does not "stand[] for the proposition that a single instance of drifting onto the shoulder can never be a violation of a traffic statute like section [41-6a-710(1)(a)]." United States v. Cline, 349 F.3d 1276, 1287 (10th Cir. 2003) (italics omitted). Rather, a court must "analyze objectively all the surrounding facts and circumstances to determine whether" an officer had reasonable suspicion that a violation of the statute had occurred. United States v. Ozbirn, 189 F.3d 1194, 1198 (10th Cir. 1999). Thus, in Ozbirn, we held the traffic stop was reasonable where no "adverse physical conditions existed" and the driver of a motor home passed over onto the shoulder "twice within a quarter mile." Id.

We reached the same conclusion in Zabalza, where an officer observed the vehicle cross the center line twice, 346 F.3d at 1258, and in Cline, where an officer observed the truck swerve onto the shoulder of the road, nearly hitting a bridge abutment, 349 F.3d at 1287. In addition, in United States v. Alvarado, 430 F.3d 1305 (10th Cir. 2005), where an officer stopped a vehicle after it "cross[ed] about a foot over the right fog lane" in a flat area of the interstate on a clear day with no wind, we found the traffic stop was

8

reasonable. 430 F.3d at 1306-07 (internal quotations omitted). In <u>Alvarado</u>, we stated:

> [W]e have already rejected the argument that the "as nearly as practical" qualification in § [41-6a-710(1)] requires the conclusion, as a matter of law, that a single instance of crossing over the fog line can never violate the statute. Rather, as previously discussed, we understand it to require a fact-specific inquiry into the particular circumstances present during the incident in question in order to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway.

<u>Id.</u> at 1309. Because of Utah Code Annotated § 41-6a-710(1)(a)'s "as nearly as practical" language, "a vehicle may weave slightly without violating the law if there are adverse conditions (high winds, sharp curves, damaged pavement)." <u>United States v. Vazquez</u>, 555 F.3d 923, 928 (10th Cir. 2009). "But absent such conditions, when police officers observe a vehicle depart from a lane, they have reasonable suspicion to stop the vehicle." <u>Id.</u>

The district court found that Tang, "in light of all of the circumstances," Aplt. App. at 64, should have been able to keep his vehicle within his assigned lane of travel. This finding was not clearly erroneous. <u>See</u> <u>United States v. Jarvison</u>, 409 F.3d 1221, 1224 (10th Cir. 2005) ("A finding of fact is not clearly erroneous unless it is without factual support in the record, or unless the court after reviewing all the evidence, is left with a definite and firm conviction that the district court erred." (internal quotations omitted)). Although Tang blamed the wind for his vehicle crossing over the fog line, and blamed the fact that Christensen was following him, the district court could reasonably credit Christensen's testimony that Tang's vehicle was over the fog line a greater distance, and

9

for a longer period, than is normally seen under these conditions. Christensen was an experienced officer who had conducted thousands of traffic stops and pulled over hundreds of drowsy or impaired drivers.

In addition, the undisputed facts are that Tang, at approximately 10:00 p.m., drove his vehicle 2 feet over the right fog line for 7 to 8 seconds for 200 to 300 yards. Although it was dark and there was a mild to moderate wind, the interstate was not winding or narrow and only curved gradually to the left. The facts of this case are unlike the facts of Gregory, wherein the defendant was driving on a winding road in a mountainous terrain in windy weather, at 6:00 p.m. with the vehicle traveling for only a short time over the line. Gregory, 79 F.3d at 975-76.

Regardless of the Utah statute, however, the district court had an additional basis for finding Christensen's stop of Tang's vehicle was reasonable. In Zabalza, we held that a police officer observing a vehicle "crossing the center line twice," was sufficient to give that officer reasonable suspicion that the driver might be sleepy or impaired. 346 F.3d at 1258. And in Ozbirn, we concluded a trooper had "a sufficient reasonable, articulable suspicion warranting an investigative stop" because the trooper

> observed the motor home drift onto the shoulder twice within a quarter mile without any adverse circumstances like road or weather conditions to excuse or explain the deviation. Such facts are sufficient to create a reasonable suspicion that the driver of the vehicle might be sleepy or impaired, and could present a risk of harm to himself and others.

189 F.3d at 1199. We have reached this same conclusion in other cases. See, e.g.,

United States v. Lee, 73 F.3d 1034, 1038 (10th Cir. 1996) (concluding that straddling the center line supported reasonable suspicion that the driver was sleepy or intoxicated), overruled on other grounds by United States v. Holt, 264 F.3d 1215, 1226 n.6 (10th Cir. 2001); Botero-Ospina, 71 F.3d at 788 (traveling well under speed limit and straddling lane supported a reasonable suspicion the driver was impaired);  United States v. Lloyd, 13 F.3d 1450, 1453 (10th Cir. 1994) (concluding that "[e]rratic driving [a sudden lane change without signaling and briefly veering a few feet off the road] supports an investigative stop to determine if the driver is intoxicated or to determine the reason for the erratic driving").

Here, Tang was driving a U-Haul vehicle when both back right tires crossed the fog line and remained there for a considerable distance before the vehicle returned to its single lane.  Upon seeing this, Christensen reasonably believed the driver of the vehicle was likely drowsy or impaired.  Christensen had stopped many drowsy drivers on this particular stretch of interstate.  In addition, Christensen reasonably believed that a driver of a U-Haul was likely moving and could have been driving all day, or for an extended length of time.  Christensen had reasonable suspicion to believe that the driver of the vehicle was impaired, and this reasonable suspicion supports his stopping the vehicle to investigate the driver's condition.

III

The traffic stop of Tang's vehicle was reasonable because of Tang's violation of Utah Code Annotated § 41-6a-710(1)(a) and Christensen's reasonable belief that Tang

11

was sleepy or impaired.  As a result, the district court's denial of Tang's motion to

suppress is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge