**2010 WY 133**

**Timothy William DODS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0118.

Supreme Court of Wyoming.

Oct. 6, 2010.

Representing Appellant: R. Michael Vang, of Fleener & Vang LLC, Laramie, WY.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

HILL, Justice.

[¶ 1] Timothy Dods appeals the denial of a motion to suppress evidence. Dods claims on appeal that a single instance of crossing a fog line does not create articulable suspicion to warrant a stop of his vehicle. We affirm.

* Chief Justice at time of expedited conference.

## ISSUE

[¶ 2] Dods' single issue is as follows:

Did the arresting officer possess sufficient facts to stop [Dods], and ultimately was there probable cause to search and seize [Dods] pursuant to Article 1 Section 4 of the Wyoming Constitution?

## FACTS

[¶ 3] On May 26, 2008, State Trooper Karl Germain noticed a blue minivan traveling eastbound on Interstate 80 west of Laramie, Wyoming. Trooper Germain observed the minivan's passenger side tires cross the white fog line by approximately eight inches for about five seconds/several hundred yards. The trooper, who was traveling westbound, crossed the median, pursued the minivan, and initiated a traffic stop. Upon contacting Dods, the trooper smelled raw marijuana coming from the vehicle. Eventually, a search of the vehicle produced approximately 60 pounds of marijuana.

[¶ 4] Dods was charged with one count of possession of marijuana with intent to deliver and one count of felony possession of marijuana. He filed a motion to suppress, which the district court denied, finding that the trooper was authorized to initiate the stop. Dods subsequently entered a conditional plea of guilty to the charge of possession of marijuana with intent to deliver, and this appeal followed.

## STANDARD OF REVIEW

[¶ 5] In reviewing a trial court's decision after a motion to suppress, we have stated:

In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo.*

*Latta v. State,* 2009 WY 35, ¶ 10, 202 P.3d 1069, 1071 (Wyo.2009) (citation omitted).

## DISCUSSION

[¶ 6] Dods contends that crossing a fog line one time, ostensibly in violation of Wyo. Stat. Ann. § 31–5–209(a)(ii) (LexisNexis 2009), does not create articulable suspicion enough to stop a driver. Conversely, the State argues that the stop was justified and that crossing a fog line once is adequate cause to stop a vehicle.

[¶ 7] Regarding the Fourth Amendment, we have stated:

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato v. State,* 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo. 2003) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). Because a traffic stop is more analogous to an investigative detention than a custodial arrest, the reasonableness of such stops is analyzed under the two-part test articulated in *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968): (1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Damato,* ¶ 9, 64 P.3d at 705.

*Garvin v. State,* 2007 WY 190, ¶ 13, 172 P.3d 725, 728–29 (Wyo.2007).

*Lovato v. State,* 2010 WY 38, ¶ 12, 228 P.3d 55, 58 (Wyo.2010).

[¶ 8] An investigatory stop represents a seizure that "implicates the Fourth Amendment, requiring the presence of specific, articulable facts and rational inferences giving rise to a reasonable suspicion that a person has committed or may be committing a crime." *Putnam v. State,* 995 P.2d 632, 637 (Wyo.2000). Reasonable suspicion is a lower standard than probable cause and requires a fact-centered inquiry based on the

"totality of the circumstances." *Fender v. State*, 2003 WY 96, ¶ 13, 74 P.3d 1220, 1225 (Wyo.2003).

[¶ 9] Dods was stopped for an alleged violation of Wyo. Stat. Ann. § 31–5–209 (LexisNexis 2009), which provides in relevant part:

§ **31–5–209. Driving on roadways laned for traffic.**

(a) Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

(i) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety[.]

Dods does not dispute that he crossed the fog line; he does, however, argue that doing so does not create the articulable suspicion needed to stop a vehicle. He submits that the statute does not demand perfection out of drivers inasmuch as it includes the language "as nearly as practicable."

[¶ 10] Abundant precedent exists on both sides of this issue. Although this particular issue has never been addressed, this Court has before emphasized the importance of maintaining a single lane of travel. In *Norman v. State*, 747 P.2d 520 (Wyo.1987), this Court upheld a conviction for driving under the influence of alcohol where the reason for the initial detention had been challenged:

Evidence introduced by appellant, in the form of the arrest report, shows facts demonstrating the requisite probable cause for Officer McGrath to stop appellant initially for a traffic violation. . . . Appellant was stopped for driving in more than one lane of traffic on a four-lane city street in violation of § 31–5–209(a)(i)[.]

*Norman*, 747 P.2d at 523.

[¶ 11] We have also discussed unintentional drifting into the passing lane of a roadway:

The fact that Campbell was looking for antelope at the time of the accident hardly excuses his negligence in drifting or turn-ing into the passing lane under the circumstances of this case. Campbell argues that the accident would not have occurred if only Hymas had alerted him to the fact that he was being passed by sounding his horn. This may be true, but the fact remains that Campbell was negligent in entering the passing lane without using due care. In [*Checker Yellow Cab Co. v. Shiflett*, 351 P.2d 660 (Wyo.1960) ] we held that "it was made the duty of the truck when changing its driving lane to make certain that this might be done with safety." 351 P.2d at 664. While we premised that conclusion where a city ordinance was involved, a factual circumstance not present here, we nevertheless note that we are here concerned with a state statute which is virtually identical to the city ordinance. Section 31–5–209(a)(i), W.S.1977, requires that a vehicle "be driven as nearly as practicable entirely within a single lane and *shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.*" [Emphasis in original.]

*Campbell v. W.S. Hatch Co.*, 622 P.2d 944, 947–48 (Wyo.1981).

[¶ 12] The Kansas Supreme Court has also had the opportunity to consider this same issue. Recently, in *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009), the Kansas Supreme Court interpreted the comparable Kansas statute single-lane rule as requiring "more than an incidental and minimal lane breach." *Id.*, at 612. The court concluded no reasonable suspicion existed where the deputy observed a vehicle momentarily cross the fog line, overcorrect, and subsequently cross the center line. As a result, *Marx* held that to establish reasonable suspicion, "a detaining officer must articulate something more than an observation of one instance of a momentary lane breach." *Id. Marx* rejected the notion that every intrusion upon a lane's marker lines gives rise to reasonable suspicion, but also stopped short of holding that a single swerve can never amount to reasonable suspicion. Rather, the *Marx* court held that under the circumstances, and given the record's complete silence as to the driving conditions and how far the vehicle

crossed over marker lines, the state had failed to carry its burden of establishing that the deputy had a reasonable suspicion of a violation of K.S.A. § 8–1522(a). *Id.*, at 613; see also *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir.1999) ("The use of the phrase 'as nearly as practicable' in [Kan. Stat. Ann. § 8–1522(a) ] precludes ... absolute standards, and requires a fact-specific inquiry to assess whether an officer has probable cause to believe a violation has occurred.").

[¶ 13] The Tenth Circuit has discussed this issue repeatedly. Notably, in *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), an officer stopped a truck after it "briefly crossed into the right shoulder emergency lane" where "[t]he road was winding, the terrain mountainous and the weather condition was windy." *Id.*, at 978. The Tenth Circuit held that the stop was unreasonable in light of the Utah statute's qualification that vehicles remain in a single lane only "as nearly as practical." The court reasoned that under the particular weather and road conditions present on that occasion, "any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity." *Id.*

[¶ 14] Subsequent to the court's decision in *Gregory*, the Tenth Circuit has emphasized that *Gregory* does not "stand[ ] for the proposition that a single instance of drifting onto the shoulder can never be a violation of a traffic statute[.]" *United States v. Cline*, 349 F.3d 1276, 1287 (10th Cir.2003) (italics omitted). Rather, a court must analyze objectively all the surrounding facts and circumstances to determine whether an officer had reasonable suspicion that a violation of the statute had occurred. *Ozbirn*, 189 F.3d at 1198. For instance, in *Ozbirn* the court held that the traffic stop was reasonable where no "adverse physical conditions existed" and the driver of a motor home passed over onto the shoulder "twice within a quarter mile." *Id.* The same conclusion was reached in *United States v. Zabalza*, 346 F.3d 1255, 1258 (10th Cir.2003), where an officer observed the vehicle cross the center line twice, and in *Cline*, 349 F.3d at 1287

where an officer observed the truck swerve onto the shoulder of the road nearly hitting a bridge abutment. In addition, in *United States v. Alvarado*, 430 F.3d 1305 (10th Cir. 2005), where an officer stopped a vehicle after it "cross[ed] about a foot over the right fog line" in a flat area of the interstate on a clear day with no wind, the court found the traffic stop was reasonable. *Id.*, at 1306–07 (internal quotations omitted). In *Alvarado*, the court stated:

> [W]e have already rejected the argument that the "as nearly as practical" qualification in § [41–6a–710(1) ] requires the conclusion, as a matter of law, that a single instance of crossing over the fog line can never violate the statute. Rather, as previously discussed, we understand it to require a fact-specific inquiry into the particular circumstances present during the incident in question in order to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway.

*Alvarado*, 430 F.3d at 1309.

[¶ 15] According to the Tenth Circuit:

> Because of Utah Code Annotated § 41–6a–710(1)(a)'s "as nearly as practical" language, "a vehicle may weave slightly without violating the law if there are adverse conditions (high winds, sharp curves, damaged pavement)." *United States v. Vazquez*, 555 F.3d 923, 928 (10th Cir.2009). "But absent such conditions, when police officers observe a vehicle depart from a lane, they have reasonable suspicion to stop the vehicle." *Id.*

*United States v. Phu Say Tang*, 332 Fed. Appx. 446, 451–452 (10th Cir.Utah 2009). The Tenth Circuit has also held that one abrupt swerve across the fog line lasting "about two seconds on the shoulder" is sufficient grounds for a stop. *United States v. Pulido-Vasquez*, 311 Fed.Appx. 140, 142, 144 (10th Cir.Kan.2009).

■■■ [¶ 16] We are in agreement with the Tenth Circuit's approach that a single instance of crossing the fog line can indeed be a violation of a "single lane of travel" statute. *Cline*, 349 F.3d at 1287. We also agree with the assessment that a court must examine all of the surrounding circumstances

to determine whether there is a justification for the stop. Keeping those principles in mind and after a thorough review of the case law and an extensive review of the record in this case, we are compelled to agree with the district court that Trooper Germain's stop of Dods was warranted. In its decision letter, the district court compared this case to another it had recently decided where a car had merely traveled *on,* and not over, the white dotted dividing line rather than, as in this case, crossing the fog line and staying there for several hundred yards. As a result of that comparison, the court had "no qualms" in concluding that Dods violated § 31-5-209, and that the trooper was authorized to initiate the traffic stop. Under adverse weather and/or road conditions, any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity. *Gregory,* 79 F.3d at 978. We keep in mind that *Gregory,* however, does not create a "bright-line rule" of what conduct constitutes a violation of this type of statute, but rather "highlight[s] the need to analyze objectively *all the surrounding facts and circumstances*" to determine whether the officer had a reasonable suspicion to make the stop. *Ozbirn,* 189 F.3d at 1198 (emphasis added). Based upon such a fact-sensitive analysis, one or two deviations from a lane may or may not constitute a violation, depending on the circumstances. While it might not be reasonable to expect a driver to avoid even the slightest deviation from a lane over an extended distance, it may be reasonable to expect drivers to avoid a sudden, significant deviation from the lane or a sudden, overcompensating return back, absent physical obstacles, mechanical difficulty, or other uncontrollable circumstances. *State v. Woodruff,* 403 N.J.Super. 620, 629, 959 A.2d 1233, 1239 (Law Div.2008).

[¶ 17] Dods' argument is generally that perfection cannot be expected out of drivers, and that following a "perfect vector" down the highway is an unreasonable expectation. We agree with him on this point. However, under the particular facts and circumstances of this case, we are not persuaded by Dods' argument on the whole. He fails to point to any objective factor that might have made it impractical for him to remain in his lane. Our review of the record shows that the weather cannot be deemed a factor in Dods' drift. Furthermore, Dods was driving on a stretch of interstate that could only be described as straight and flat. It could be that an isolated incident of a vehicle crossing into the emergency lane of a roadway is not a violation of Wyoming law. A single lane deviation, however, that in this case was eight inches over the fog line for approximately 550 feet, is egregious enough to rise to the level of reasonable articulable suspicion. Given the length and distance of Dods' drift, the deviation over the fog line was great enough that it warranted being stopped although the weather conditions were not ideal on that particular day.[1]

[¶ 18] Under the language of our own statute, when an officer merely observes someone drive a vehicle outside the marked lane, he does not automatically have probable cause to stop that person for a traffic violation. The use of the phrase "as nearly as practicable" in the statute precludes such absolute standards and requires a fact-specific inquiry to assess whether an officer has probable cause to believe that a violation has occurred. The facts in this case warrant the conclusion that Dods' one-time lane deviation, the fact that it was extensive, both in time and distance, constitutes a violation of Wyoming law, and thus warrants the invasion of Dods' Fourth Amendment rights.

## CONCLUSION

[¶ 19] Taking into account the totality of circumstances, we affirm the district court's decision denying Dods' motion to suppress.

VOIGT, J., files a specially concurring opinion.

VOIGT, Justice, specially concurring.

[¶ 20] I concur in the result reached in the majority opinion because I believe that, if

1. Trooper Germain testified that the weather was "overcast, rainy, I believe a little bit of snow mixed in there, and some wind."

the Trooper saw what he says he saw, then he was justified in making the traffic stop.[1] I write separately, however, to point out a couple of conceptual difficulties. First is the question of whether a traffic stop must be justified by probable cause or by the lower reasonable suspicion standard. Our law is not at all clear in that regard. Wyo. Stat. Ann. § 7-2-103(a) (LexisNexis 2009) provides that a "citation may issue as a charging document for any misdemeanor which the issuing officer has probable cause to believe was committed by the person to whom the citation was issued." W.R.Cr.P. 3(b)(3) contains similar language. In *Fertig v. State*, 2006 WY 148, ¶¶ 24–28, 146 P.3d 492, 499–501 (Wyo.2006), and in *Damato v. State*, 2003 WY 13, ¶ 12, 64 P.3d 700, 706 (Wyo.2003), we held that an officer's observation of a traffic violation gave rise to probable cause so as to justify a traffic stop. And in *Norman v. State*, 747 P.2d 520, 523 (Wyo.1987), we noted that the evidence revealed "facts demonstrating the requisite probable cause for" a traffic stop based upon the very statute at issue in this case. At the same time, however, we have said several times that traffic stops are analyzed under the lesser reasonable suspicion standard. *See, e.g., Lovato v. State*, 2010 WY 38, ¶ 13, 228 P.3d 55, 58 (Wyo.2010); *Garvin v. State*, 2007 WY 190, ¶ 13, 172 P.3d 725, 728–29 (Wyo.2007); *Fender v. State*, 2003 WY 96, ¶ 13, 74 P.3d 1220, 1225 (Wyo. 2003); and *Damato*, 2003 WY 13, ¶ 9, 64 P.3d at 704–05.

 I raise this issue because the cases cited in the majority opinion, as well as the majority opinion itself, do not seem to come down clearly on one side or the other on this question. Furthermore, the cited cases, plus cases such as *McChesney v. State*, 988 P.2d 1071 (Wyo.1999); *Wilson v. State*, 874 P.2d 215 (Wyo.1994); and *Keehn v. Town of Torrington*, 834 P.2d 112 (Wyo.1992), suggest that the distinction between a traffic stop based upon an observed traffic violation—the stop being made for the purpose of issuing a citation—and a traffic stop based upon reasonable suspicion that some crime may have been committed—the stop being made for the purpose of investigating that possible crime, traffic or otherwise—has been blurred.[2]

[¶ 22] Of even more concern to me, however, is the fact that this is one bizarre statute. Apparently, it is not a crime if one violates the statute a little bit, but it is a crime if one violates the statute somewhat more than a little bit. If you stay in your lane, you have not violated the statute, but if you go out of your lane, you *may have* violated the statute. In the context of the present case, if the appellant's conduct may or may not have provided the officer with reasonable suspicion and/or probable cause to believe that the appellant violated the statute, how on earth is the appellant supposed to have notice, before the fact, that his conduct will violate the statute?

[¶ 23] We said the following in *Fertig:*

We also find the rationale of *Whren* [*v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ] persuasive in that we are not in a position to identify which traffic laws should be enforced and which violations should be disregarded by law enforcement. *Violations of the traffic code provide an objective standard by which to judge the reasonableness of a traffic stop seizure because an observed violation provides probable cause for a traffic stop seizure.*

---

1. I am not entirely comfortable with that statement because, as the majority points out in a footnote, quoting the Trooper, the weather was "overcast, rainy, I believe a little bit of snow mixed in there, and some wind." Could that not have made it "impracticable" to keep the vehicle entirely within a single lane, and would that not mean that the driver had not violated the statute? *See United States v. Gregory*, 79 F.3d 973, 978 (10th Cir.1996). It would seem, though, that the question of impracticability should, in most cases, be an evidentiary issue at trial, rather than

a factor determinative of justification for the traffic stop.

2. If a traffic stop can be made based only upon reasonable suspicion, but the issuance of a citation requires probable cause, every reasonable-suspicion traffic stop requires further investigation for the development of probable cause. That makes no sense in the context of the observed violation of a section of the traffic code because no further investigation is necessary before issuance of a citation.

*Fertig*, 2006 WY 148, ¶ 27, 146 P.3d at 501 (citing *Whren*, 517 U.S. at 818–19, 116 S.Ct. at 1776–77) (emphasis added). The point is that a traffic code provision, like any criminal law, is supposed to describe the conduct that is prohibited. Under Wyo. Stat. Ann. § 31–5–209 (LexisNexis 2009), however, the trial judge at some later point in time tells both the defendant and the officer whether the observed conduct even provided reasonable suspicion and/or probable cause that the statute was violated. How can a stop be justified by an observed "violation" where the officer does not know whether what he has observed is a violation?

[¶ 24] This is not simply an evidentiary issue. It is an issue involving the clarity of a criminal statute. Compare the "single lane" statute with, for instance, the traffic-control device statute, the latter being found at Wyo. Stat. Ann. § 31–5–402(a) (LexisNexis 2009):

(a) The driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed or held in accordance with this act. . . .

Under § 31–5–402(a), if a driver fails to stop at a stop sign, both the driver and the officer observing that failure know that the driver has violated the statute. The officer has the requisite reasonable suspicion and/or probable cause to stop the vehicle and to issue the driver a citation for running the stop sign, and the driver cannot defend by claiming that he only ran the stop sign a little bit. Furthermore, the trial judge cannot declare that the officer lacked reasonable suspicion and/or probable cause to make the traffic stop because the driver only violated the statute a little bit. Given a particular set of evidentiary facts—the driver ran the stop sign—different judges should not be allowed to declare differently whether that conduct justified a traffic stop.[3] But under § 31–5–209(a), that is precisely the case. Both the citizenry and law enforcement require more guidance than that.

---

**3.** There are three circuit court judges in Cheyenne. Under the "as nearly as practicable" language of Wyo. Stat. Ann. § 31–5–209(a), Judge A could impose a standard whereby reasonable suspicion/probable cause exists where the officer observes a vehicle cross the fog line for 300 feet, Judge B could impose a standard whereby reasonable suspicion/probable cause exists only if the officer observes a vehicle cross the fog line for at least 500 feet, and Judge C could impose a standard whereby reasonable suspicion/probable cause exists only if the officer observes a vehicle cross the fog line more than once, with the tires being at least eight inches across the line. More significant, of course, is the fact that a particular defendant might or might not be guilty of violating the statute, depending upon which standard was being imposed. Ludicrous.