2011 WY 143

**William Scott TIERNAN,**
**Appellant (Plaintiff),**

v.

**The STATE of Wyoming, DEPARTMENT**
**OF TRANSPORTATION, Appellee**
**(Defendant).**

No. S–11–0058.

Supreme Court of Wyoming.

Oct. 14, 2011.

Representing Appellant: R. Michael Vang of Fleener & Vang, LLC, Laramie, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; John S. Shumway, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] A Wyoming State Trooper stopped William Scott Tiernan on suspicion of driving while impaired after he observed Mr. Tiernan's vehicle cross the center line and the fog line a couple of times. The trooper conducted field sobriety tests and arrested Mr. Tiernan for driving under the influence of alcohol. Mr. Tiernan refused to submit to chemical testing and the Wyoming Department of Transportation (WYDOT) advised him that it intended to suspend his driver's license. Mr. Tiernan requested a hearing during which he argued the trooper was not justified in stopping him. The Office of Administrative Hearings (OAH) upheld the suspension. Mr. Tiernan appealed to the district court, which affirmed the OAH order.

[¶ 2] Mr. Tiernan appealed the district court's ruling affirming the OAH order. He contends the trooper failed to present sufficient facts to support the stop for a lane violation. We affirm.

## ISSUE

[¶ 3] We restate the issue Mr. Tiernan presents as follows:

Whether the DVD recording taken from the trooper's patrol car supports the conclusion that he had probable cause to stop Mr. Tiernan for failing to maintain a single lane of traffic in violation of Wyo. Stat. Ann. § 31–5–209(a)(i) (LexisNexis 2011).

## FACTS

[¶ 4] Around 9:45 p.m. on May 1, 2010, Wyoming Highway Patrol Trooper David Wagener was patrolling Highway 130 in Albany County. According to his report, he was behind a blue Chevy truck with Florida license plates. His report states:

> I observed the truck cross over the dashed center line one time to the south, drift to the right and then cross over the white fog line to the north. The Chevy truck was traveling approximately 60 mph in a posted 65 mph zone. At that point, I was suspicious that the driver of the blue Chevy truck was possibly intoxicated.
>
> As I continued to observe the truck, an eastbound vehicle approached with its headlights on. As the eastbound vehicle approached the Chevy truck, I observed the Chevy truck drift back across the north white fog line. This observation increased my suspicion that the driver may be intoxicated, as I noted from my experience and training that impaired drivers will sometimes steer away from oncoming headlights. Based on my observations, I conducted a traffic stop on the blue Chevy truck at mile post 05.00 on WY 130 westbound in Albany County for lane use and suspicion of an impaired driver.

[¶ 5] As Trooper Wagener activated his flashing lights and approached the truck, it pulled off the highway and stopped. Upon contacting the driver, the trooper observed signs that he had been drinking. Mr. Tiernan admitted that he had consumed alcohol, but said he thought he was okay to drive. He refused to submit to a breath test. The trooper asked him to perform field sobriety tests which, according to his report, Mr. Tiernan performed poorly. He arrested Mr. Tiernan for driving under the influence of alcohol and transported him to the detention center where Mr. Tiernan again refused to submit to a breath test.

[¶ 6] By letter dated May 11, 2010, WY-DOT advised Mr. Tiernan that based upon his refusal to submit to a chemical test his driver's license would be suspended for six months in accordance with Wyo. Stat. Ann. § 31-6-102 (LexisNexis 2009).[1] Mr. Tiernan submitted a request for a hearing to contest the suspension. The OAH convened a hearing on July 14, 2010. Mr. Tiernan and his attorney appeared by telephone and presented as evidence the DVD recording taken from the patrol car, arguing that it did not support the trooper's report that his vehicle had crossed the center and fog lines and the stop was invalid. WYDOT submitted its certified record containing Trooper Wagener's certified statement and arrest report. After the hearing, the OAH entered an order upholding the implied consent suspension. Mr. Tiernan filed a petition for review of the OAH order in the district court.

[¶ 7] In addition to having his driver's license suspended, Mr. Tiernan was charged in circuit court with driving while under the influence of alcohol. Mr. Tiernan moved to dismiss the charge on the grounds that Trooper Wagener lacked an articulable suspicion for stopping him for a lane violation. On September 2, 2010, the circuit court entered an order dismissing the case, stating that it had viewed the DVD and "was unable to see the alleged traffic violations claimed by the officer."

[¶ 8] In January of 2011, the district court issued a decision letter on Mr. Tiernan's petition for review finding that Trooper Wagener had reasonable suspicion to conduct the traffic stop and upholding the OAH order suspending his license. The decision letter was followed by an order from which Mr. Tiernan timely appealed to this Court.

## STANDARD OF REVIEW

[¶ 9] We review an appeal from a district court's review of an administrative agency's decision as if it had come directly from the administrative agency. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review of an administrative agency's action is governed by Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2011), which provides that the reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 10] In reviewing an agency's factual findings:

[W]e examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Hwang v. State, Dep't of Transp.*, 2011 WY 20, ¶ 9, 247 P.3d 861, 864 (Wyo.2011). A traffic stop is a limited investigatory detention and implicates constitutional protections. *Batten v. Wyo. Dep't of Transp. Drivers' License Div.*, 2007 WY 173, ¶ 10, 170 P.3d 1236, 1240 (Wyo.2007). Whether a violation of constitutional rights occurred is a question of law, which we review *de novo*. *Id.*, ¶ 12, 170 P.3d at 1241.

---

1. Section 31-6-102 was amended effective July 1, 2011 to provide for issuance of a remotely communicated search warrant when a person refuses a peace officer's request to submit to a chemical test. The search warrant may be issued upon the officer's sworn statement transmitted by voice, image, text or a combination thereof, when the judicial officer is satisfied probable cause exists to issue the warrant. Any license suspension is based upon the results of the chemical test and a signed statement from the officer.

## DISCUSSION

[¶ 11] Mr. Tiernan asserts the DVD recording does not support the OAH's conclusion that Trooper Wagener was justified in stopping him for improper lane use. He contends the circuit court's ruling to the contrary was correct. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Parks v. State*, 2011 WY 19, ¶ 7, 247 P.3d 857, 858 (Wyo.2011), quoting *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo.2003). Detention of a motorist is justified when the officer has probable cause to believe a traffic violation has occurred or has a reasonable articulable suspicion that the particular motorist is engaged in criminal activity. *Harvey v. State*, 2011 WY 72, 250 P.3d 167 (Wyo.2011); *Frazier v. State*, 2010 WY 107, 236 P.3d 295 (Wyo.2010).

[¶ 12] In the present case, the OAH and the district court concluded Trooper Wagener had a reasonable suspicion to stop Mr. Tiernan for a lane violation. Before considering whether the evidence supported a finding that the stop was justified, we take this opportunity to clarify the distinction between probable cause and reasonable suspicion for a traffic stop. We have said that reasonable suspicion is a lower standard than probable cause and requires a fact-centered inquiry based on the totality of the circumstances. *Dods v. State*, 2010 WY 133, ¶ 8, 240 P.3d 1208, 1209–10 (Wyo.2010). To the extent that the distinction between the two standards has been blurred, *see Dods*, ¶ 20, 240 P.3d 1208, 1212–1213 (Voigt, J., concur-

ring), we clarify that a law enforcement official's personal observation of a traffic law violation provides *probable cause* to initiate a traffic stop. Thus, an officer had probable cause to initiate a traffic stop after personally observing a vehicle with a cracked windshield and obstructed license plate in violation of the law, *Lovato v. State*, 2010 WY 38, ¶ 13, 228 P.3d 55, 58 (Wyo.2010); after personally observing a vehicle following another vehicle too closely, *Garvin v. State*, 2007 WY 190, ¶ 13, 172 P.3d 725, 728–29 (Wyo.2007); after personally observing speeding violations, *Fertig v. State*, 2006 WY 148, ¶¶ 24–28, 146 P.3d 492, 499–501 (Wyo.2006), *Damato*, ¶ 12, 64 P.3d at 706, and *Fender v. State*, 2003 WY 96, ¶ 13, 74 P.3d 1220, 1225 (Wyo.2003); and after personally observing a vehicle driving in more than one lane of traffic, *Dods*, ¶ 18, 240 P.3d at 1212, *Norman v. State*, 747 P.2d 520, 523 (Wyo.1987). Whether the officers in those cases had *reasonable suspicion to detain the drivers after the initial stop* was a separate question the resolution of which depended on the circumstances. Likewise, the question of whether an officer has a reasonable suspicion of criminal activity justifying a traffic stop in the absence of personally observing a traffic violation is a separate question which is determined based upon the totality of the circumstances. In cases like the present one, however, the question is whether the evidence supported the conclusion that the trooper had probable cause to stop Mr. Tiernan's vehicle for failing to maintain a single lane of traffic.

[¶ 13] Trooper Wagener stated in his report that he stopped Mr. Tiernan's vehicle for an observed lane violation and on suspicion that the driver was intoxicated.[2] He stated that he made the stop after observing

---

2. Trooper Wagener suspected Mr. Tiernan violated the following statutes:

> **§ 31–5–209. Driving on roadways laned for traffic.**
>
> (a) Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> (i) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety[.]

> **§ 31–5–233. Driving or having control of vehicle while under influence of intoxicating liquor[.]**
>
> ....
>
> (b) No person shall drive or have actual physical control of any vehicle within this state if the person:
>
> ....
>
> (ii) To a degree which renders him incapable of safely driving:
>
> (A) Is under the influence of alcohol[.]

the vehicle cross the center line once, drift back across the lane and cross the fog line, and cross the fog line again when a vehicle approached from the opposite direction. Trooper Wagener stated in his report that in his experience, intoxicated drivers tend to steer away from oncoming headlights.

[¶ 14] Addressing Mr. Tiernan's argument that the DVD recording contradicted the trooper's report, the OAH noted that it was taken at night at highway speeds and was of poor quality. The OAH also noted that for the first ten to fifteen seconds, Mr. Tiernan's vehicle was too far away to tell from the recording whether it maintained its travel lane. The OAH found, however, that Trooper Wagener's report "unequivocally described clear violations of state traffic laws," giving him justification to initiate a traffic stop. While acknowledging that the recording did not clearly depict whether Mr. Tiernan's vehicle crossed over the center line or fog line, the OAH found that in the nearly two minutes recorded, Mr. Tiernan's vehicle appeared to drift to the far left side of its lane of travel, drift again to the far left side of its lane and then back to the fog line and drift back towards the fog line and far to the right side of its lane when headlights approached from the opposite direction. The OAH found in each instance that the vehicle "possibly" crossed over the center line or the fog line. After watching the recording, the OAH concluded that rather than contradicting the trooper's report it corroborated his report and he was justified in stopping the vehicle for violating § 31–5–209(a)(i) and on suspicion of violating Wyo. Stat. Ann. § 31–5–233(b).

[¶ 15] Mr. Tiernan contends the evidence was insufficient to support the stop for a lane violation because, as the OAH found, it showed only that he "possibly" crossed over the center line and fog line. He asserts the term "possibly" is speculative and not enough to establish that he violated the law so as to warrant a traffic stop. He maintains the circuit court got it right when it concluded the DVD did not show the alleged violation. He also contends the OAH's ruling is contrary to *Dods*, ¶ 8, 240 P.3d at 1209, which

requires consideration of mitigating factors in determining whether a driver has violated § 31–5–209(a)(i). The mitigating factors in his case, he argues, are that he came close to the lines only when he was on a curve and when oncoming traffic approached.

[¶ 16] In *Dods*, a trooper stopped a vehicle after observing it cross the fog line. The defendant contended that crossing a fog line once, ostensibly in violation of Wyo. Stat. Ann. § 31–5–209(a)(i), did not justify the stop. *Id.*, ¶ 6, 240 P.3d at 1209. He argued the words "as nearly as possible" in the statute showed that it did not demand perfection. *Id.* We concluded that a single instance of crossing the fog line could be a violation of the "single lane of travel" statute. *Id.*, ¶ 16, 240 P.3d at 1211. We emphasized that all of the surrounding circumstances must be examined in determining whether a stop was justified. *Id.*, ¶ 16, 240 P.3d at 121. We concluded the circumstances in that case, which showed the vehicle crossed eight inches over the fog line and stayed across for approximately 550 feet, justified the traffic stop. *Id.*, ¶ 17, 240 P.3d at 1212.

[¶ 17] We find nothing in the OAH's ruling that is inconsistent with *Dods*. In accordance with *Dods*, the OAH examined all of the surrounding circumstances in determining whether Trooper Wagener was justified in stopping Mr. Tiernan's vehicle, including the trooper's report, the DVD and Mr. Tiernan's argument that the DVD refuted the report. Upon consideration of all of the circumstances, the OAH concluded the trooper was warranted in stopping the vehicle.

[¶ 18] Having examined the entire record, we conclude substantial evidence supported the agency's decision. The trooper stated in his report that he observed the vehicle cross over the center line, drift back to the right and cross over the fog line and drift again over the fog line at the approach of another vehicle. In addition to these statements, the OAH reviewed the DVD and found that although it did not depict clearly whether Mr. Tiernan's vehicle crossed over the lines because of its poor quality and limited duration,

it did show the vehicle drifting from one side of the lane to the other more than once and, therefore, corroborated the trooper's statements. Taken together, the report and the DVD constitute relevant evidence from which a reasonable mind might conclude that Trooper Wagener had probable cause to stop Mr. Tiernan's vehicle for a traffic violation.

[¶ 19]   Affirmed.