2012 WY 101

**Patrick R. ESPINOZA, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).**

**No. S–11–0291.**

Supreme Court of Wyoming.

July 25, 2012.

---

Representing Appellant: R. Michael Vang of Fleener & Vang LLC, Laramie, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; Kristin M. Nuss, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   After stopping Patrick R. Espinoza for failing to maintain a single lane of travel while driving on Interstate 80 (I–80) in Laramie, Wyoming, an Albany County Sheriff's deputy arrested Mr. Espinoza for driving while under the influence of alcohol. The Wyoming Department of Transportation (WYDOT) suspended Mr. Espinoza's driver's license, and he objected. At the contested case hearing, Mr. Espinoza claimed the deputy was not justified in stopping him. The Office of Administrative Hearings (OAH) upheld the suspension, and the district court affirmed. We conclude the deputy had probable cause to stop Mr. Espinoza for a traffic violation and affirm.

## ISSUE

[¶ 2]   The issue presented for our review is whether the evidence supports the conclusion that the deputy had probable cause to stop Mr. Espinoza for violating Wyo. Stat. Ann. § 31–5–209 (LexisNexis 2011), which requires vehicles be driven "as nearly as practicable entirely within a single lane" of traffic.

## FACTS

[¶ 3]   In the early morning hours of February 11, 2011, Albany County Sheriff's Deputy Jeffrey Beeston was patrolling in Laramie when he observed a pickup, which was later determined to be driven by Mr. Espinoza, accelerate quickly and turn abruptly onto the I–80 on-ramp. Deputy Beeston followed the pickup onto the interstate and activated his DVD recording device to record Mr. Espinoza's driving. Deputy Beeston observed Mr. Espinoza swerving and then abruptly leave the interstate at the Snowy Range exit.

[¶ 4]   Deputy Beeston followed Mr. Espinoza off the interstate, activated his lights and stopped Mr. Espinoza. The deputy observed signs that Mr. Espinoza had been drinking alcohol and proceeded to administer sobriety tests, which Mr. Espinoza failed. The deputy arrested Mr. Espinoza for driving while under the influence of alcohol in violation of Wyo. Stat. Ann. § 31–5–233 (LexisNexis 2010) and administered a breath test that showed he had an alcohol concentration of 0.17%, more than two times the legal limit allowed for driving.

[¶ 5]   WYDOT suspended Mr. Espinoza's driver's license, and he requested a contested case hearing. He argued at the hearing that Deputy Beeston did not have legal justification to stop him, but after reviewing the DVD recording and the deputy's report, the OAH found the stop was legal and upheld the suspension. Mr. Espinoza petitioned the district court for review of the OAH decision, and that court affirmed. He then filed a notice of appeal with this Court.

## STANDARD OF REVIEW

[¶ 6]   Our review of an administrative decision is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole

record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Reviewing an agency's factual findings,

we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.

*Hwang v. State, Dep't of Transp.,* 2011 WY 20, ¶ 9, 247 P.3d 861, 864 (Wyo.2011). The issue in this case invokes constitutional protections; the determination of whether a violation of constitutional rights occurred is a question of law, which we review *de novo. Tiernan v. State, Dep't of Transp.,* 2011 WY 143, ¶ 10, 262 P.3d 561, 564 (Wyo.2011).

## DISCUSSION

[¶ 7] The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and sei-

zures. Although the purpose of a traffic stop is limited and the resulting detention brief, a routine traffic stop still constitutes a seizure within the meaning of the Fourth Amendment. *Parks v. State,* 2011 WY 19, ¶ 7, 247 P.3d 857, 858 (Wyo.2011); *Damato v. State,* 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo.2003). "Detention of a motorist is justified when the officer has probable cause to believe a traffic violation has occurred or has a reasonable articulable suspicion that the particular motorist is engaged in criminal activity." *Tiernan,* ¶ 11, 262 P.3d at 565. *See also, Harvey v. State,* 2011 WY 72, 250 P.3d 167 (Wyo. 2011); *Frazier v. State,* 2010 WY 107, 236 P.3d 295 (Wyo.2010).

[¶ 8] In this case, Deputy Beeston stopped Mr. Espinoza because he observed a violation of § 31-5-209. Section 31-5-209 states, in relevant part:

(a) Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

(i) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety[.]

Given Deputy Beeston's personal observation of a traffic law violation, our inquiry focuses on whether he had probable cause to initiate the stop.[1] *Tiernan,* ¶ 12, 262 P.3d at 565. Probable cause is defined as:

The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' * * * * Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.

---

1. The hearing examiner analyzed whether the deputy had reasonable articulable suspicion to justify the stop. As we stated, *supra,* in addition to the probable cause justification for a stop, a law enforcement officer may detain a motorist if he "has a reasonable articulable suspicion that the particular motorist is engaged in criminal activity." *Tiernan,* ¶ 11, 262 P.3d at 565. However, when the officer claims he personally witnessed a violation of law, the inquiry focuses on whether he had probable cause to seize the offender. *Id.,* ¶ 12, 262 P.3d at 565.

*DeHerrera v. State*, 589 P.2d 845, 847 (Wyo. 1979), quoting *Rodarte v. City of Riverton*, 552 P.2d 1245, 1252 (Wyo.1976) (other citations omitted).

[¶9] As an initial matter, we note that Mr. Espinoza expends a great deal of space in his brief analyzing the meaning of § 31–5–209 and arguing that, given the statutory imperative that a driver maintain his lane to the extent "practicable," we should interpret the statute as only prohibiting failing to maintain a lane if another vehicle/driver is placed in danger.[2] This Court discussed § 31–5–209 at length in *Dods v. State*, 2010 WY 133, 240 P.3d 1208 (Wyo.2010). We considered case law from other jurisdictions interpreting statutes with language similar to our "as nearly as practicable" requirement and concluded:

> We ... agree with the [Tenth Circuit's] assessment that a court must examine all of the surrounding circumstances to determine whether there is a justification for the stop.... Under adverse weather and/or road conditions, any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity. *Gregory*, 79 F.3d at 978. We keep in mind that *Gregory*, however, does not create a "bright-line rule" of what conduct constitutes a violation of this type of statute, but rather "highlight[s] the need to analyze objectively *all the surrounding facts and circumstances* " to determine whether the officer had a reasonable suspicion to make the stop. *Ozbirn*, 189 F.3d at 1198 (emphasis added). Based upon such a fact-sensitive analysis, one or two deviations from a lane may or may not constitute a violation, depending on the circumstances. While it might not be reasonable to expect a driver to avoid even the slightest deviation from a lane over an extended distance, it may be reasonable to expect drivers to avoid a sudden, significant deviation from the lane or a sudden, over-compensating return back, absent physical obstacles, mechanical difficulty, or other uncontrollable circumstances. *State v.*

*Woodruff*, 403 N.J.Super. 620, 629, 959 A.2d 1233, 1239 (Law Div.2008).

*Id.,* ¶16, 240 P.3d at 1211–12. Mr. Espinoza has not convinced us that we should waver from our decision in *Dods,* and we will continue to follow that approach without superimposing a requirement that any lane deviation put another driver into danger before the statute is violated.

[¶10] Mr. Espinoza next claims the DVD recording of his driving contradicts the deputy's report that he failed to maintain a single lane of travel and, accordingly, Deputy Beeston was not justified in stopping him. The details of Deputy Beeston's report were included in the OAH findings:

> 2. The certified record included Deputy Beeston's certified Officer's Signed Statement (Signed Statement) and an attached and referenced Narrative about his stop, investigation, arrest and chemical testing of Espinoza on February 11, 2011. Deputy Beeston's Narrative described his reasons for stopping Espinoza as follows:

> On 02/11/2011 at approximately 0200 hours, I was northbound on 3rd Street and saw a vehicle pulling away northbound from the intersection of Skyline and 3rd Street. The vehicle, a dark colored pickup truck, accelerated quickly and turned abruptly onto the I–80 westbound on ramp. I began to follow the vehicle, but was quite some distance behind. I was able to see the pickup cross the solid white line that separates the right hand travel lane and the on ramp lane, and caught up to the vehicle shortly thereafter.

> I noted that in the 312 milepost, the pickup went across the centerline then drifted back across the right lane and across the fog line before regaining a single lane of travel. When the truck approached the 312 ramp, it passed the actual off ramp lane and suddenly veered onto the off ramp. The left tires of the truck were approximately to the left of the left side line, although it was covered with snow and I could not tell for certain. The truck

---

**2.** Mr. Espinoza also discusses recent changes to the implied consent law and the admissibility of the results of chemical testing. Neither of these matters is relevant to the issue presented in this case; consequently, we will not discuss them.

was not driving on the portion of the roadway that was cleared of snow where most traffic drives.

The OAH decision also describes the DVD recording:

10.  This Office thoroughly reviewed the DVD of the traffic stop on February 11, 2011.  The DVD does not show Espinoza's vehicle pull away from the curb, accelerate and turn onto the I–80 on ramp.  The DVD begins at 03:01:54, with the deputy on the on ramp to I–80 and Espinoza's vehicle is some distance ahead.  At 03:01:58, Espinoza's vehicle is observed crossing the white line dividing the on ramp lane from the right hand lane of travel on I–80. While Espinoza's vehicle is some distance ahead it appeared his vehicle crossed into the right lane of travel prior to the end of the on ramp lane.  At 03:02:20, Espinoza's vehicle is observed touching and driving on the centerline dividing the two lanes of travel on I–80. Espinoza's vehicle is then observed drifting to the right and touching or driving on the white fog line at 03:02:28.  A short time later Espinoza's vehicle appeared to be touching or driving on the center dividing line.  At 03:02:32, Espinoza's vehicle appeared to be in the middle of the driving lane and at 03:02:36, Espinoza's vehicle once again appeared to b[e] touching the white fog line.

[¶ 11]  In response to Mr. Espinoza's argument that the DVD contradicted the deputy's narrative report, the hearing examiner ruled:

11.  This Office disagrees with the argument made by Espinoza's counsel.  Deputy Beeston's detailed narrative established a violation of WYO. STAT. ANN. § 31–5–209(a)(i) (LEXIS 2010) by Espinoza, as he failed to maintain his lane of travel on I–80. Additionally, the DVD confirmed Deputy Beeston's recitation of driving actions by Espinoza on I–80. It is questionable that crossing over the white line dividing the on ramp lane from the right hand lane of travel is a violation of law but Espino-

za's driving actions from approximately 03:02:20 to 03:02:36[ ] do establish Espinoza failed to maintain his lane of travel.  The proposed suspension action should be upheld.

[¶ 12]  There are many similarities between the case at bar and *Tiernan;* consequently, we look to it for guidance.[3]  Like Mr. Espinoza, Mr. Tiernan asserted the DVD recording of his driving did not demonstrate a justifiable reason to stop him.  The highway patrol trooper who stopped Mr. Tiernan reported that "he made the stop after observing the vehicle cross the center line once, drift back across the lane and cross the fog line, and cross the fog line again when a vehicle approached from the opposite direction."  *Id.,* ¶ 13, 262 P.3d at 565–66.  The DVD recording in *Tiernan* did not clearly depict the lane violations; however, it did show Mr. Tiernan's vehicle drifting back and forth in the lane.  Relying on *Dods,* we stated that the OAH properly examined all of the circumstances, including the trooper's report, the DVD and Mr. Tiernan's argument that the DVD refuted the report, and concluded the trooper was warranted in stopping the vehicle.  *Id.,* ¶ 17, 262 P.3d at 566.  We, therefore, ruled there was substantial evidence in the record to support the agency's decision that the trooper had probable cause to stop Mr. Tiernan for a traffic violation.  *Id.,* ¶ 18, 262 P.3d at 566–67.

[¶ 13]  We have carefully reviewed the DVD of Mr. Espinoza's driving and, like in *Tiernan,* agree with the hearing examiner that it confirms rather than contradicts Deputy Beeston's report.  The DVD shows Mr. Espinoza weaving back and forth across his lane of traffic, i.e., driving on or over the center line, drifting to the right and driving on or over the fog line, and then drifting back across the lane and driving on or over the center line again.  Deputy Beeston's report stated that Mr. Espinoza crossed the center and fog lines as he was driving.  As such, the facts and circumstances within Deputy Beeston's knowledge were sufficient to warrant a man of reasonable caution to

---

**3.**  ·Mr. Espinoza completely ignores the existence of the *Tiernan* decision, not even mentioning it in his brief.  This is somewhat surprising given Mr. Espinoza and Mr. Tiernan were represented by the same attorney.

believe Mr. Espinoza failed to drive "as nearly as practicable entirely within a single lane." Section 31–5–209; *DeHerrera*, 589 P.2d at 847.

[¶ 14] Mr. Espinoza claims the deputy's report improperly stated that the lane violations occurred at milepost 312 when milepost 312 is actually further down the highway. The deputy's report stated: "I noted that in the 312 milepost, the pickup went across the centerline then drifted back across the right lane and across the fog line before regaining a single lane of travel." We do not read the deputy's report as stating that the violations occurred precisely at milepost 312. There is obviously a typographical error when it states "in the 312 milepost." The lane breaches occurred within close proximity to milepost 312, and a reasonable interpretation of the report is that the deputy was simply referencing the nearby milepost. Moreover, the lane violations are shown on the DVD, so the fact that the deputy may have made a slight mistake in locating them is largely irrelevant. We conclude the record contains substantial evidence that the deputy had probable cause to stop Mr. Espinoza for failing to maintain his lane of travel in violation of § 31–5–209.

[¶ 15]  Affirmed.