# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 123

## OCTOBER TERM, A.D. 2013

<u>October 9, 2013</u>

KEITH VOGT,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF
TRANSPORTATION,

Appellee
(Respondent).

S-12-0283

*Appeal from the District Court of Laramie County*
The Honorable Peter G. Arnold, Judge

*Representing Appellant:*
    Bernard Q. Phelan, Cheyenne, Wyoming.

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy
    Attorney General; Douglas J. Moench, Senior Assistant Attorney General.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1] Keith Vogt was stopped for failing to use his turn signal and subsequently arrested for driving while under the influence of a controlled substance (DUI) in violation of Wyo. Stat. Ann. § 31-5-233(b) (LexisNexis 2009). He refused to submit to chemical testing. The Wyoming Department of Transportation (the State) notified him that his driver's license would be suspended for six months. Mr. Vogt requested a hearing. After the hearing, the Office of Administrative Hearings (OAH) found there was probable cause for the arrest and upheld the suspension. Mr. Vogt appealed the ruling to the district court, which affirmed the OAH decision. He then appealed to this Court, claiming reasonable suspicion did not exist for detaining him beyond the scope of the initial traffic stop and the OAH ruling that probable cause existed to arrest him for DUI is contrary to the overwhelming weight of the evidence. We conclude probable cause did not exist to arrest Mr. Vogt for DUI and reverse the OAH order upholding the driver's license suspension.

## ISSUES

[¶2] The issues for this Court's determination are:

1. Whether reasonable suspicion existed to detain Mr. Vogt for field sobriety tests after he was stopped for a traffic violation;

2. Whether the OAH's determination that probable cause existed to arrest Mr. Vogt for DUI was clearly contrary to the overwhelming weight of the evidence.

## FACTS

[¶3] On July 8, 2010, at 10:17 p.m., Officer T.J. Whitaker of the Cheyenne Police Department observed a vehicle enter an intersection and make a wide right-hand turn without signaling, continue on to a stop sign and make a second turn without signaling.[1] The officer followed the vehicle and turned on his flashing lights. After the vehicle pulled over, the officer approached the driver's side window and asked the occupant, Mr. Vogt, for his driver's license and proof of insurance. The video of the stop shows that Mr. Vogt did not immediately find the correct insurance information for the car he was driving. He produced an expired insurance card and one for another vehicle he owned before producing the correct card.

---

[1] The officer's signed statement indicates Mr. Vogt made two successive turns without signaling. The OAH viewed a video recording of the stop taken by a dashboard camera in the patrol car and found that Mr. Vogt made one turn without signaling and used his signal late on the second turn after moving into the turning lane. From our review of the video, we conclude Mr. Vogt made two turns without signaling and signaled a third turn after moving into the turning lane and stopping at a red light.

1

[¶4]  Officer Whitaker asked him where he was coming from and Mr. Vogt responded that he was looking at some apartments in the area.  Upon further questioning Mr. Vogt stated he was looking at apartments on Campbell Avenue and provided his home address.  According to Officer Whitaker, Mr. Vogt's hands shook, his voice trembled and he mumbled.

[¶5]  Officer Whitaker instructed Mr. Vogt to wait and returned to his patrol car where he called for assistance.  Officer Lisa Koeppel[2] arrived and Officer Whitaker returned to Mr. Vogt's vehicle and asked him to get out of the car.  Officer Whitaker performed a pat down search of Mr. Vogt.  He asked Mr. Vogt if he had been drinking and Mr. Vogt said no.  Officer Whitaker asked if he was taking any prescription medications and Mr. Vogt responded, "Uh, not really, no."  Officer Whitaker asked Mr. Vogt if he was taking over the counter medication.  Mr. Vogt responded that he had taken Prozac.  The officer asked if he had any physical disabilities and Mr. Vogt said no.  He asked Mr. Vogt what his highest level of education was and Mr. Vogt responded that he had about a year of college.[3]  Officer Whitaker then asked Mr. Vogt about the apartments he was looking at on Campbell Avenue.  He asked Mr. Vogt why he was moving and Mr. Vogt stated that he was not moving; rather, he was looking at apartments for someone else.[4]

[¶6]  Officer Whitaker then asked Mr. Vogt to perform the horizontal gaze nystagmus (HGN) test.[5]  According to the officer's signed statement, Mr. Vogt showed some signs of nystagmus but not others.  Officer Whitaker also had Mr. Vogt perform a walk and turn, one leg stand and Romberg test.[6]  The officer concluded Mr. Vogt failed the tests.  The video recording then shows Officer Koeppel taking Mr. Vogt's pulse.  The results

---

[2] Officer Koeppel is a drug recognition expert, meaning she has been trained to conduct examinations of suspected drug-impaired drivers.

[3] The police department's booking information sheet lists Mr. Vogt's occupation as "lawyer."  This is clearly incorrect given Mr. Vogt's statement that he had completed about a year of college.

[4] In his report, Officer Whitaker stated Mr. Vogt changed his story when he said he was looking for an apartment for a friend.  Having reviewed the video recording, we conclude Officer Whitaker's statement is not supported by the evidence.

[5]  The HGN and vertical nystagmus tests are used to assess the eyes' tracking ability.  Drug Evaluation and Classification Training, "The Drug Recognition Expert School" Student Manual, U.S. Department of Transportation (1999 Ed.), Session IV, p. 9.  Nystagmus, an involuntary jerking that occurs as the eyes gaze to the side or as they look up, is induced by alcohol and certain drugs.  Session IV-3.  The officer holds a penlight or similar object twelve to fifteen inches in front of the suspect's face and moves it smoothly to the suspect's extreme left and back to the extreme right or vertically while instructing the suspect to follow the motion with his eyes.  If the eyes jerk rather than following the object smoothly, it may be an indication of the use of alcohol or certain drugs.

[6]  Although not listed in his report, Officer Whitaker also had Mr. Vogt recite the alphabet.  The video recording shows that Mr. Vogt completed this test satisfactorily.

are unknown but Officer Koeppel can be seen talking with Mr. Vogt and he can be heard saying he is nervous. Officer Koeppel had Mr. Vogt stare straight ahead while she looked at his eyes with her flashlight. Using her flashlight, she also looked in his mouth and had him swallow. She asked if he was a smoker and he appears to respond, "Sometimes." Again, there is no indication in the report what, if anything, Officer Koeppel may have seen or determined from these actions.

[¶7] At that point, twenty minutes into the stop, Officer Whitaker asked Mr. Vogt if there was anything in his car and if he could take a look. Mr. Vogt said there was nothing in the car and refused permission to search his vehicle. Officer Whitaker called for a drug dog and a portable breath test (PBT). Twenty-two minutes into the stop, while waiting for the drug dog and PBT, Officer Whitaker advised Officer Koeppel within Mr. Vogt's hearing that he had stopped Mr. Vogt for failing to signal, making a wide turn into the center of the street and then failing to signal again at the next turn. He also advised Officer Koeppel there was no indication Mr. Vogt was under the influence of alcohol. He then questioned Mr. Vogt again, asking the name of the friend he was looking at apartments for (Mr. Vogt responded "Rene"); why he was looking this late at night (Mr. Vogt said he wanted to see what the neighborhood was like late at night); whether the apartment was on this or that side of Lincolnway (Mr. Vogt provided the address of the apartment and said it was on that side); and why he was making a right turn on 14th Street (Mr. Vogt described turning right onto Campbell and right onto 14th Street heading west). Officer Whitaker asked Officer Koeppel what she thought and she motioned toward her mouth. Officer Whitaker asked Mr. Vogt to stick out his tongue and used a flashlight to look in his mouth again.

[¶8] Officer Whitaker returned to his patrol car and began writing a ticket for the traffic violation. Officer Pat Johnston arrived and Officer Whitaker administered the PBT, which showed negative results for alcohol. Officer Johnston had the dog perform an exterior sniff of the vehicle and the dog alerted on the driver's side. The officer let the dog inside the vehicle; it did not alert again. Officers Johnston and Koeppel searched the vehicle and found nothing illegal.

[¶9] Meanwhile, Officer Whitaker had Mr. Vogt stand up against his patrol car while he conducted a more thorough search. He found a receipt in Mr. Vogt's pant pocket. As he unfolded it, he thought he saw something flicker in the headlights and fall to the street. He advised the other officers who came and looked and questioned Mr. Vogt about what he had taken. Again Mr. Vogt said he had taken Prozac. Officer Johnston took the receipt and something Officer Koeppel picked up from the street and apparently field tested them for controlled substances. Officer Koeppel told Officer Whitaker within Mr. Vogt's hearing that the test was positive for crack. A few minutes later, she advised Officer Whitaker that she had lied about the results of the field test. At 11:10 p.m., fifty minutes after the stop, Officer Whitaker placed Mr. Vogt under arrest for DUI and

advised him of the implied consent law. Mr. Vogt refused to submit to chemical testing and was taken to the police station.

[¶10] The State notified Mr. Vogt that as a result of his arrest and refusal to submit to chemical testing his driver's license would be suspended for six months. Mr. Vogt requested a hearing. A hearing was convened. The State did not appear but submitted the certified record which included among other items Officer Whitaker's signed statement and booking sheet. Mr. Vogt appeared with counsel and testified. Mr. Vogt's case before the agency focused on whether probable cause existed to arrest him for DUI. He did not argue that Officer Whitaker lacked reasonable suspicion to detain him after the traffic stop for the purpose of conducting field sobriety tests. Mr. Vogt testified in some detail about what happened during the stop. He testified that he had consumed no alcohol or controlled substances on the night he was arrested. He testified he had taken Prozac which was prescribed for an anxiety disorder. He further testified that he was nervous and anxious during the traffic stop because he had never before been in a situation like it. After the hearing, the OAH issued an order finding that probable cause existed for the arrest and upholding the suspension of Mr. Vogt's driver's license.

[¶11] Mr. Vogt petitioned for review in the district court. Again, he argued the officer did not have probable cause to arrest him for DUI. The district court affirmed the OAH. Mr. Vogt timely appealed to this Court, claiming for the first time that reasonable suspicion did not exist to detain him for field sobriety tests.

## STANDARD OF REVIEW

[¶12] We review administrative rulings in accordance with the following standards:

> We review an appeal from a district court's review of an administrative agency's decision as if it had come directly from the administrative agency. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review of an administrative agency's action is governed by Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2011), which provides that the reviewing court shall:
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

4

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In reviewing an agency's factual findings:

> [W]e examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Hwang v. State, Dep't of Transp.*, 2011 WY 20, ¶ 9, 247 P.3d 861, 864 (Wyo. 2011).

> A traffic stop is a limited investigatory detention and implicates constitutional protections. *Batten v. Wyo. Dep't of Transp. Drivers' License Div.*, 2007 WY 173, ¶ 10, 170 P.3d 1236, 1240 (Wyo. 2007). Whether a violation of constitutional rights occurred is a question of law, which we review *de novo*. *Id*., ¶ 12, 170 P.3d at 1241.

*Tiernan v. State, Dep't of Transp.*, 2011 WY 143, ¶ 9, 262 P.3d 561, 564 (Wyo. 2011).

> On the question of probable cause, we apply the substantial evidence standard of review to the hearing examiner's factual findings concerning whether the [officer] had probable cause to arrest, but review the constitutionality of the particular seizure de novo. *Batten v. Wyo. Dep't of Transp. Drivers' License Div.*, 170 P.3d 1236, 1240 (Wyo.2007).

*Vasco v. State, Dep't of Transp.*, 2011 WY 100, ¶ 9, 253 P.3d 515, 517 (Wyo. 2011).

**DISCUSSION**

[¶13] Mr. Vogt challenges the OAH decision on two bases. First, he argues Officer Whitaker did not have reasonable suspicion to detain him beyond the scope of the traffic

stop in order to administer field sobriety tests.  Second, he claims the officer did not have probable cause to arrest him for DUI.  If either of these arguments is correct, then his arrest was unlawful and the provisions of the implied consent law do not apply to support suspension of his driver's license.  *Batten v. Wyo. Dep't of Transp. Drivers' License Div'n*, 2007 WY 173, ¶ 8, 170 P.3d 1236, 1240 (Wyo. 2007).  This is so because in addition to proving that probable cause existed to arrest Mr. Vogt for DUI as provided in Wyo. Stat.  Ann. § 31-6-103 (LexisNexis 2013), the State was required to show the arrest was lawful under § 31-6-102(a)(i)(A) (LexisNexis 2013).  *Batten*, citing *Marshall v. State*, 941 P.2d 42, 44 (Wyo. 1997).  *See also Coyler v. State*, 2009 WY 43, ¶ 10 n.2, 203 P.3d 1104, 1111 n.2 (Wyo. 2009).   Section 31-6-102 provides in relevant part:

> **§ 31-6-102. Test to determine alcoholic or controlled substance content of blood; suspension of license.**
>
> (a) If arrested for an offense as defined by W.S. 31-5-233:
>
> (i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood. *The test or tests shall be:*
>
> *(A) Incidental to a lawful arrest*;

(Emphasis added.)  Section 31-6-103 provides:

> **§ 31-6-103. Application for hearing; stay of suspension of license; scope of hearing.**
>
> . . . .
>
> (b) The scope of a hearing for the purposes of this act shall cover the issues of *whether a peace officer had probable cause* to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31-5-233(b) or any other law prohibiting driving under the influence as defined by W.S. 31-5-233(a)(v), whether the person was placed under arrest, or if a test was administered, whether the test results indicated that the person had an

6

alcohol concentration of eight one-hundredths of one percent (0.08%) or more, and whether, except for the persons described in this act who are incapable of cooperating with the administration of the test, he had been given the advisements required by W.S. 31-6-102(a)(ii).

(Emphasis added.)

### 1. Reasonable Suspicion to Detain for Field Sobriety Tests Following Traffic Stop.

[¶14]  Mr. Vogt presents his claim that reasonable suspicion did not exist to detain him after the initial stop for the first time on appeal to this Court.[7]  He asserts the evidence the officer claimed to have at the time he detained him was insufficient to give rise to a reasonable suspicion that he was under the influence of alcohol or a controlled substance. He further contends many of Officer Whitaker's observations, which he relied upon in detaining Mr. Vogt, are belied by the video recording.

[¶15]  We customarily will not consider issues presented for the first time on appeal. The only exceptions to the rule are when an issue is one of jurisdiction or involves a fundamental right.  *Schlesinger v. Woodcock*, 2001 WY 120, ¶ 18, 35 P.3d 1232, 1239 (Wyo. 2001).  This Court has recognized that the right to be free from unreasonable searches and seizures is one of the most cherished rights provided by both the federal and state constitutions.  *Collins v. State,* 854 P.2d 688, 691 (Wyo. 1993).  We, therefore, proceed to address the issue raised.

[¶16]  We have said:

> The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato v. State,* 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo.2003) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)).  Because a traffic stop is more analogous to an investigative detention than a custodial arrest, the reasonableness of such stops [is] analyzed under the two-part test articulated in *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889

---

[7] Interestingly, the State in its brief does not argue that this Court should decline to address the argument. The State simply does not address Mr. Vogt's reasonable suspicion argument.

(1968): (1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Damato*, ¶ 9, 64 P.3d at 705.

*Lovato v. State*, 2010 WY 38, ¶ 12, 228 P.3d 55, 58 (Wyo. 2010), citing *Garvin v. State*, 2007 WY 190, ¶ 13, 172 P.3d 725, 728-29 (Wyo. 2007).

[¶17] Mr. Vogt does not challenge the initial traffic stop. Indeed, Wyoming law is clear that "a law enforcement official's personal observation of a traffic law violation provides probable cause to initiate a traffic stop." *Tiernan*, ¶ 12, 262 P.3d at 565. Here, Officer Whitaker stopped Mr. Vogt after observing his vehicle turn without signaling in violation of Wyoming law.[8] Officer Whitaker's observation is corroborated by the video recording. There is no question probable cause existed for the traffic stop.

[¶18] We turn to the question whether after stopping Mr. Vogt for failing to signal Officer Whitaker had reasonable suspicion to detain him further for the purpose of conducting field sobriety tests. This is a separate issue from probable cause and its resolution depends upon the totality of the circumstances and how those circumstances developed during the encounter. *Id.*; *Dimino v. State*, 2012 WY 131, ¶ 16, 286 P.3d 739, 744 (Wyo. 2012). A law enforcement official must be able to point to specific, articulable facts that, taken together with rational inferences, give rise to an objectively reasonable suspicion that the suspect had committed or was committing a crime. *Tiernan*, ¶ 12, 262 P.3d at 565. In reviewing the totality of the circumstances, we consider common sense and ordinary human experience and defer to a law enforcement officer's ability to distinguish between innocent and suspicious actions. *Dimino*, ¶ 16, 286 P.3d at 744, citing *Damato v. State*, 2003 WY 13, ¶ 16, 64 P.3d 700, 707 (Wyo. 2003).

[¶19] In the instant case, at the time Officer Whitaker detained Mr. Vogt for reasons beyond the scope of the traffic violation, he had seen Mr. Vogt fail to use his turn signal, make a wide turn into the center of the street and then fail to use his turn signal again after stopping at a stop sign. When asked to produce his driver's license and proof of insurance, Mr. Vogt fumbled with and handed Officer Whitaker insurance cards that had expired or were for another vehicle before finding the current one for the vehicle he was driving. Upon questioning Mr. Vogt, Officer Whitaker observed that he mumbled; he was shaky; he could not give clear or concise answers to questions; he had a difficult time focusing; and his voice trembled. On the basis of these observations and conclusions, Officer Whitaker suspected Mr. Vogt was under the influence of alcohol or a controlled substance and detained him for the purpose of conducting field sobriety tests.

---

[8] Section 31-5-217 (LexisNexis 2013) prohibits turning a vehicle without signaling.

[¶20]   In *Batten,* ¶ 13, 170 P.3d at 1241, we held that a state trooper had reasonable suspicion justifying extending a traffic stop where the driver smelled moderately of alcohol, admitted he had just left a bar where he had consumed one drink, could not locate the proof of insurance for the vehicle when the trooper requested it, and was driving a vehicle late at night with knowledge that it had a broken headlight.   The present case differs from *Batten* in that no evidence exists that Mr. Vogt smelled of alcohol and Officer Whitaker did not ask him whether he had been drinking before deciding to conduct field sobriety tests.   Nevertheless, from the totality of the circumstances, we conclude sufficient specific, articulable facts, taken together with rational inferences, gave rise to an objectively reasonable suspicion that Mr. Vogt was under the influence of alcohol or a controlled substance.

[¶21]   The video confirms that Mr. Vogt failed to signal two turns at night on dark city streets.   On the first turn he swung into the center of the street. When asked to produce proof of insurance for the vehicle he was driving, he fumbled with insurance cards and produced an expired insurance card and a card for a different vehicle apparently without knowing it until the officer pointed it out.   According to the officer, his speech was mumbled, his voice trembled, he was shaky, he could not give clear or concise answers to questions, and he had a difficult time focusing on what he was being asked and requested to do.   Considering common sense and ordinary human experience and deferring to Officer Whitaker's ability to distinguish between innocent and suspicious actions, we conclude reasonable suspicion existed to detain Mr. Vogt beyond the scope of the traffic stop for the purpose of conducting field sobriety tests.

### 2. *Probable Cause to Arrest for DUI.*

[¶22]   The OAH's conclusion that probable cause existed to arrest Mr. Vogt for DUI was based on the following factual findings:   Officer Whitaker had observed Mr. Vogt's vehicle make two turns without properly signaling; Mr. Vogt appeared to have trouble focusing on simple questions; Mr. Vogt's hands shook, his voice trembled and his speech was mumbled; Mr. Vogt changed his story about where he had been and could not provide the name of the street where the apartments he was looking at were located; Mr. Vogt's eyes jerked on the HGN test; Mr. Vogt could not adequately perform the walk and turn, one leg stand or Romberg test; Mr. Vogt exhibited tremors; a portable breath test showed negative results for alcohol; and the drug dog alerted to Mr. Vogt's vehicle although no drugs were found.   While noting that one or two of these findings could be explained by other reasons, the OAH concluded together they provided probable cause to believe Mr. Vogt was driving while under the influence of an illegal substance.

[¶23]   Mr. Vogt asserts the OAH conclusion is contrary to the overwhelming weight of the evidence.   He argues his failure to use a turn signal gave the officer probable cause to stop him for a traffic violation but was not evidence of DUI.   He claims the video tape

recording does not substantiate the finding that he had difficulty focusing on questions or that his speech was mumbled, his voice trembled and his hands shook. He asserts the video demonstrates that he did not change his story and did provide the name of the street where the apartments were located. He contends the results of the HGN test did not indicate intoxication because, as reflected in the officer's signed statement, "his eyes pursu[ed] smoothly at times" and "he did not have distinct and sustained nystagmus at max[imum] deviation and no onset prior to 45 degrees." He disputes that he failed to adequately perform the other tests, and asserts that to the extent he was off balance when performing them it was because the sidewalk was slanted, he was anxious and Officer Whitaker's instructions were less than clear. He contends the video does not show that he had tremors and, to the extent he may have been shakey, it was due to his anxiety. He argues the drug dog's alert is evidence of nothing given that no drugs were found. He also points out that Officer Whitaker searched him twice and found nothing illegal.

[¶24] "Probable cause for a warrantless arrest exists when, under the totality of the circumstances, a prudent, reasonable, and cautious peace officer would be led to believe that a crime has been or is being committed and that the individual arrested is the perpetrator." *Batten*, ¶ 16, 170 P.3d at 1242, quoting *Keene v. Town of Torrington*, 834 P.2d 112, 116 (Wyo. 1992). The totality of the circumstances in this case showed that Mr. Vogt:

- did not use his turn signal when making two turns on two lane streets with virtually no traffic, turned wide into the center of the street after the first turn, signaled a third turn after stopping at a red light on a busy four lane street and signaled again when turning off the busy street to pull over in response to the patrol car's flashing lights.

- produced his driver's license but had at least three insurance cards in his vehicle and had difficulty in the dark with only the aid of the officer's flashlight finding the current one for the vehicle he was driving;

- was nervous;

- spoke quietly and hesitantly in some instances but answered other questions clearly and definitively;

- did not have distinct and sustained nystagmus;

- clearly and correctly recited the alphabet;

- wobbled some when asked to stand on one leg while holding the opposite foot off the ground;

10

- ended the Romberg test before the thirty seconds when Officer Koeppel shined her flashlight directly in his face;

- denied having consumed alcohol;

- did not smell of alcohol or controlled substances, did not have slurred speech, and did not stumble, stagger or have difficulty walking;

-  did not tell inconsistent stories about why he was looking at apartments;

- submitted to a PBT that was negative for alcohol; and

- did not have controlled substances in his vehicle or on his person.

Absent from the totality of the circumstances is any evidence that Mr. Vogt's pupils were dilated, his face was flushed or pale, he was perspiring, his breathing or pulse was abnormally fast or slow or other indicators of alcohol or controlled substances use.

[¶25]  The totality of the circumstances simply does not support the OAH's conclusion that probable cause existed to arrest Mr. Vogt for driving while under the influence of alcohol or controlled substances.  Particularly in light of the fact that the PBT was negative for alcohol and searches of Mr. Vogt's vehicle and his person prior to his arrest produced no evidence of controlled substances, we conclude a prudent, reasonable and cautious police officer would not have arrested him for DUI.  The OAH's conclusion that probable cause existed to arrest Mr. Vogt for DUI was clearly contrary to the overwhelming weight of the evidence.

[¶26]  We reverse and remand to the district court with directions to remand to the OAH for entry of an order reversing the driver's license suspension.